**Linda BRANHAM, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 58077.**

Court of Criminal Appeals of Texas, Panel No. 2.

July 18, 1979.

R. William Wood, Denton, for appellant.

Jerry Cobb, Dist. Atty., Bruce F. Baxter, and Gary Patton, Asst. County Attys., Denton, Robert Huttash, State's Atty., Austin, for the State.

Before DOUGLAS, TOM G. DAVIS and DALLY, JJ.

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for involuntary manslaughter. V.T.C.A. Penal Code, Sec. 19.05(a)(1). After returning a verdict of guilty, the jury assessed punishment at ten years and a $5,000 fine.

In her first ground of error, appellant contends that the trial court erred in failing to charge the jury on the offense of criminally negligent homicide. Appellant had been indicted for the offense of murder. The trial court charged the jury on the law of murder, involuntary manslaughter, justification, mistake of fact, and self-defense. Appellant properly objected to the court's failure to include a charge on criminally negligent homicide, and submitted a requested jury instruction on the issue.

Appellant shot and killed the deceased after coming into possession of his gun. There was conflicting testimony as to whether the deceased handed her his gun or whether she "snatched" it from him. The deceased had quarreled with appellant earlier in the day and he had fired a shot at her with the same pistol. Appellant testified:

"Q. All right. Now, when he handed you the pistol, was it in the holster or out of the holster?

"A. No, it was out of the holster.

"Q. All right. How did he hand it to you?

"A. He just pulled it out and handed it to me and I took it by the handle.

"Q. Okay. Did you think the gun was loaded?

"A. No, I didn't.

"Q. Why?

"A. Because after what he had just did to me, I didn't think that he would give me a loaded gun.

"Q. Now, when you say 'what he just did to you,' what do you mean?

"A. By poking it all in my face, you know, and shooting at me and everything, I didn't think he would give me a gun that was loaded after that."

Appellant testified that she had never previously held a gun. Appellant further testified:

"A. After he handed me the gun, he started toward me as I was backing up, and I had pulled this thing right here down and I was backing up and somebody—it was down, and somebody from behind grabbed me, and by that time, you know, I had

the gun up like this and it just went off and—

"Q. Do you know whether or not you had your finger on the trigger?

"A. I don't think I did.

"Q. Why were you holding the gun up?

"A. Mainly to keep him back.

"Q. At that time were you or were you not afraid of Muff?

"A. Yes, I was at that time.

"Q. What were you afraid he might do?

"A. Take the gun, if he got close enough, and shoot me with it.

"Q. All right. Did you mean to shoot Muff Garrett?

"A. No, I didn't.

"Q. Did you know you were shooting the gun when you shot it?

"A. No. When I shot the gun it scared me by the way it went off, kinda—I couldn't hear for a minute or two, you know, real hard ringing in my ears—just scared me, I was looking at him laying there and blood on the front of his shirt."

The State impeached the testimony of appellant by having her read portions of her written statement given to the police. The statement indicated that appellant had intentionally shot the deceased.

A person commits the offense of criminally negligent homicide if he causes the death of an individual by criminal negligence. V.T.C.A. Penal Code, Sec. 19.07(a). "Criminal negligence" is defined in Sec. 6.03(d) of the Penal Code:

"A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint."

In *Moore v. State*, Tex.Cr.App., 574 S.W.2d 122, the defendant testified that she could not remember aiming the gun or pulling the trigger of the gun that shot the victim. She was unfamiliar with guns and thought that the gun was unloaded. This Court held that the trial court should have charged the jury on criminally negligent homicide in that the defendant's testimony raised an issue as to whether she was negligent in not perceiving the risk which her conduct created. Likewise, in *London v. State*, Tex.Cr.App., 547 S.W.2d 27, we held that the trial court erred in failing to charge the jury on criminally negligent homicide after the defendant testified that the gun he was holding on the victim accidentally discharged after he was hit in the back by a third party. In *Dockery v. State*, Tex.Cr.App., 542 S.W.2d 644, it was found that the defendant had properly been charged with criminally negligent homicide under our new Penal Code. The defendant's weapon had accidentally discharged while the defendant was attempting to uncock it. Lastly, in *Scott v. State* (No. 55,695, del. May 23, 1979) we held that the defendant was not entitled to a charge on criminally negligent homicide when he testified that he intentionally shot at the deceased to scare him.

The State contends that a charge on criminally negligent homicide was not required in this case in that by convicting appellant of involuntary manslaughter, the jury by implication found that appellant was aware of the risk in pointing the gun at the deceased. We have recently held that criminally negligent homicide is a lesser included offense of involuntary manslaughter and that when evidence raises both issues, upon proper request, the issues are to be submitted to the jury. *Ormsby v. State* (No. 57,537, del. May 9, 1979).

This Court has held on many occasions that when evidence from any source raises a defensive issue or raises an issue that a lesser included offense may have been committed and a jury charge on the issue is properly requested, the issue must be submitted to the jury. *Moore v. State*, supra;

*Thompson v. State*, Tex.Cr.App., 521 S.W.2d 621; *Esparza v. State*, Tex.Cr.App., 520 S.W.2d 891; and *Gavia v. State*, Tex.Cr. App., 488 S.W.2d 420.

Appellant's testimony at trial indicates that while she intended to point the gun at the deceased, she was not aware of the risk which her conduct created. On the other hand, her written statement to the authorities indicates that she perceived the risk of her conduct. The credibility of evidence and whether it is controverted or conflicts with other evidence in the case may not be considered in determining whether a defensive charge or instruction on a lesser included offense should be given. *Moore v. State*, supra. The only issue before this Court is whether there was evidence at appellant's trial which raised the issue of criminally negligent homicide.

We conclude that based on appellant's testimony that she thought the gun was unloaded, that she did not intend to fire the gun, that her finger was not on the trigger, and that the gun accidentally discharged when she was grabbed by a third party, the issue of criminally negligent homicide was raised. Therefore, the trial court erred in failing to charge the jury on this issue.

The judgment is reversed and the cause remanded.