**Jerry Lavon ELLIOTT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–81–00073–CR.**

Court of Appeals of Texas, El Paso.

July 28, 1982.

Ederer, Holmes, Neill & Broaddus, Ronald F. Ederer, El Paso, for appellant.

Steve W. Simmons, Dist. Atty., R. Bradford Stiles, Asst. Dist. Atty., El Paso, for appellee.

Before STEPHAN F. PRESLAR, C. J., and OSBORN and SCHULTE, JJ.

## OPINION

SCHULTE, Justice.

This is an appeal from a conviction for voluntary manslaughter. The jury assessed punishment at twenty years confinement. We affirm.

The sole issue raised on appeal asserts that the trial court erred in refusing Appellant's requested charge on the lesser included offense of criminally negligent homicide.

Appellant (forty-five years of age) and the victim (twenty years of age) began living together in September 1979. Both were married at the time, but subsequently obtained divorces from their respective spouses. They lived together for several months, but the victim left the Appellant in March, 1980. They apparently were reconciled in April and resumed joint occupancy of Appellant's apartment, along with the victim's eighteen-month-old child. On July 10, 1980, Appellant was temporarily assigned to Tucson, Arizona, to work on radar equipment for the U. S. Customs Service. While there, he was offered a permanent position at that location. He returned to El Paso on July 23. On the afternoon of that date, he met the victim at his apartment. He described her as withdrawn. He advised her of his possible transfer. That evening, Appellant went out to drink beer. When he returned, the victim had gone out, contrary to her earlier indications to him. The victim returned at 1:00 a. m. and angrily accused Appellant of spreading rumors about a relationship between her and another man. She told Appellant she did not

love him and had just used him, as she had other men. She left again, but returned at 2:30 a. m. At that time she indicated she would look for another apartment. On Thursday, July 24, the victim was apparently looking for work and for a new apartment. Appellant spent the day picking up his paycheck and drinking at a bar and local VFW post. Appellant and the victim had an argument over money in the afternoon.

That night, Appellant went to his ex-wife's house to arrange for visitation with his children the following Sunday. An argument took place. Appellant returned to his apartment but did not see the victim again until Friday morning, at which time another altercation took place. During the day, Appellant visited the same bar and VFW post as on the preceding day. Friday evening, Appellant remained at home, drinking bourbon and waiting for the victim to return. She remained out all night. Saturday morning, Appellant awoke, had a beer and then placed the victim's and her child's belongings in boxes and placed these on the front porch. The victim's mother called. Appellant told her that he had put her belongings on the porch. An argument ensued. Appellant testified that he was upset at this point. Several minutes later, the victim arrived with her child. An argument took place over the removal of her property. She then started to call her mother. Appellant testified that his mind was blank from that point until the gun went off. At the latter moment, he was standing in the dining room with his .357 magnum revolver in his hand. The victim was in the process of falling to the floor between the sofa and coffee table in the living room. He testified that the gun went off in his hand. He did not drop it. Nor was there any struggle or physical contact between the two individuals. Appellant could not remember pointing or firing the weapon. He also could not remember taking it from the shelf in a walk-in closet at the rear of the apartment, where it was kept, loaded.

After the shooting, Appellant drove to New Mexico, leaving the eighteen month old child at the apartment with the victim's body. He returned to El Paso two days later and surrendered to the police, before the body and child had been discovered. The coroner testified that the cause of death was excessive bleeding due to a single gun shot wound to the neck. The bullet passed through the victim in a horizontal plane. It travelled through the living room wall at a slight upward angle and come to rest in the bedroom. A weapons expert from the Department of Public Safety testified that the weapon was in proper working condition, including three safety mechanisms. Trigger pull in a single-action mode was measured at four pounds; in a double-action mode, fourteen pounds. Appellant was indicted for murder. The court submitted charges on murder and voluntary manslaughter. The jury returned a verdict of guilty on the latter charge.

Appellant's assertion that he was entitled to a charge on criminally negligent homicide is based upon faulty interpretations of the testimony concerning the path of the bullet and his own testimony as to his state of mind at the time the shot was fired. Based upon measurements taken at the scene, Detective George Drenman reported:

'It also appears that the subject responsible for the gunshot, more than likely fired the weapon from a waist to center of the chest area, meaning that the projectile travelled up at an approximate ten to fifteen degree (10°—15°) angle.'

This information, coupled with Appellant's military experience and knowledge of firearms, leads appellate counsel to the conclusion that "there was no aiming of the weapon" and "negligent handling of the weapon by the Appellant caused its discharge." The testimony and physical evidence does not support such a conclusion. Further, Appellant's testimony:

"I don't know why I got the gun. I can't—I've tried to think of a reason for getting it. . . . Only thing I can think of is maybe I wanted to scare her. I don't know. I didn't get it to kill her, that's for sure."

is translated in the appellate brief to a statement that he definitely got the gun to scare her. This is a strained translation, reflecting wished-for testimony rather than what was actually said. The critical words were "maybe" and "I don't know."

There is absolutely no testimony or evidence of accidental discharge or negligent handling which distinguishes this case from those cited by Appellant. In *Simpkins v. State*, 590 S.W.2d 129 (Tex.Cr.App.1979), defense testimony indicated that the shotgun discharged while bystanders struggled over it with the defendant. Even there the appellate court found that the evidence merely raised an issue of the voluntariness of the act, justifying charges on murder and accident but not criminally negligent homicide. In *Jackson v. State*, 548 S.W.2d 685 (Tex.Cr.App.1977), the defendant claimed amnesia with regard to the act of shooting his wife and another woman. As in this case, the appellate court held that the physical evidence supported an intent to kill and the defendant's amnesia would not justify a charge on the lesser offense. In *Branham v. State*, 583 S.W.2d 782 (Tex.Cr.App.1979), testimony indicated that the defendant's pistol discharged when a third party grabbed him from behind. As in this case, the shooting had been preceded by an argument between the deceased and the defendant and the gun was retrieved from a remote location. In *London v. State*, 547 S.W.2d 27 (Tex.Cr.App.1977), the defendant testified that someone struck the pistol in his hand while he had it pointed at the deceased. In *Moore v. State*, 574 S.W.2d 122 (Tex.Cr.App.1978), the defendant's neighbor brought a shotgun out of his house to assist her in ordering the deceased away. The defendant grabbed the shotgun. She did not intend to point it or discharge it. She was unfamiliar with weapons, thought this one was unloaded and was unaware of the danger. All of these factors were expressly in evidence. They were not speculative injections into an amnesiac state.

As previously stated, the weapon was in Appellant's hand when it discharged. He did not drop it. He was not interfered with by any other person. He was familiar with firearms, particularly this weapon. The weapon had to be taken from its storage location in a back closet. In a double-action mode, it required fourteen pounds of pressure on the trigger. The shooting followed three days of arguments between the parties, as well as Appellant's arguments with his ex-wife and the deceased's mother.

Under any test for the submission of lesser included offenses, the evidence in this case does not support a charge on criminally negligent homicide. *Royster v. State*, 622 S.W.2d 442, 444, 446, 445–447 (Tex.Cr.App. 1981) (opinions by Davis, Dally, and Clinton, JJ.). Ground of Error No. One is overruled.

The judgment is affirmed.