**Billy Wayne DOWDEN, Sr., Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 01–81–0560–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

June 10, 1982.

Discretionary Review Granted
Nov. 17, 1982.

Larry Dowell, Leonard Roth, Houston, for appellant.

James O. Jenkins, Jr., Orange, for appellee.

## OPINION ON MOTION FOR REHEARING

DYESS, Justice.

The opinion heretofore issued on February 25, 1982 is withdrawn and the following opinion is substituted.

The appellant and his co-defendant, Clifford Blansett, were indicted for capital murder—knowingly and intentionally causing the death of a police officer who was acting in the course of duty and who was known to the defendant to be a police officer. Tex. Penal Code Ann. § 19.03(a). Blansett was convicted of capital murder by a jury in the 128th District Court in Orange County, Texas. This conviction was affirmed by the Court of Criminal Appeals, *Blansett v. State*, 556 S.W.2d 322 (Tex. Cr. App. 1977). The appellant, however, requested and received, a change of venue from Orange County to Harris County, where his case was assigned to the 182nd Judicial District Court. Thereafter, a plea bargain was reached between the State and the appellant. By the terms of the plea bargain, the appellant would waive his right to a jury trial and plead guilty, and the State would waive the death penalty. Based upon the agreements of the parties, and upon the evidence presented to it, the court assessed punishment at life imprisonment.

Subsequently, the appellant submitted a post conviction writ of habeas corpus to the Court of Criminal Appeals pursuant to Tex. Code Crim. Pro. Ann. art. 11.07 (Vernon 1974). In such writ the appellant asserted that the State did not have the power to waive the death penalty and that an accused in a capital murder case cannot waive his right to a jury trial. The Court of Criminal Appeals agreed. *Ex Parte Dowden,* 580 S.W.2d 364 (Tex. Cr. App. 1979). Thus, the writ was granted, the conviction set aside, and the case remanded to the trial court for a trial by jury on the merits.

The appellant was subsequently tried by the jury, found guilty of capital murder, and sentenced to life imprisonment. The appeal before this court stems from that trial.

The factual background giving rise to the prior proceedings and the conviction in this case is the following.

On June 28, 1974, at 1:00 a.m., the appellant's brother, Charles Ray Dowden, was arrested for robbing a 7–11 convenience store in Orange, Texas. He was taken to the police station where he was booked and placed in the city jail on the second floor of the police station.

The appellant, who had been at the convenience store with his brother, decided to aid his brother in escaping from jail, and he drove to his brother's house, where he picked up his sister-in-law, and told her of his plan to get his brother out of jail. The appellant and his sister-in-law then drove to Clifford Blansett's house, where they picked up a rifle and a pistol, and the three drove to the police station, arriving there around 4:00 a.m. on that same morning.

The appellant and Blansett entered the police station and went to the dispatcher's booking office, where two police officers and one dispatcher were working. The appellant slammed open the door to the dispatcher's office, pointed an automatic pistol at the police officers and declared, "I have come to get Charles." The officers were stunned at the outset, but quickly regained their composure. Captain Gray (the deceased) lunged at the appellant, grabbed the hand in which he was holding the gun and, placing his other arm around the appellant's body, forced him into the hall. The door, operating on a spring closing device, closed automatically behind them. At this moment, the two men remaining in the office could not see what was happening, but they heard a shot fired in the hallway. No longer being able to see Captain Gray, they presumed that he had been shot by the appellant and was dead.

Meanwhile, the officer remaining in the dispatcher's office, Officer Windham, drew his pistol, and the dispatcher, Denton,

slipped into a small room adjoining the dispatcher's office to load a shotgun. There ensued an exchange of gunfire between the appellant and Officer Windham and Denton.

After the fusillade subsided, Officer Windham heard "moving around in the hall." Whereupon Denton hollered, "He's coming in through the door" (or "He's at the door"). There was more "moving around" and then another bullet came through the booking window. Following this last shot the door came "crashing open," and Windham immediately "shot twice and then again." According to Officer Windham's testimony, when he fired these shots he was on his knees at the edge of the booking counter closest to the door. The pistol was in his left hand, around the corner of the cabinet, and aimed at the door. On cross-examination, Windham admitted that he did not look before he fired because he thought that only the appellant could be coming through the door. Upon being asked why he shot without looking, he said he thought that he would be killed if he did not.

Officer Windham's three shots at the person in the doorway were the last shots fired. The two men, Windham and Denton, not knowing whether their assailants had left or whether they had taken a breather, radioed for help. It was not until Windham crawled back to join Denton in the back room that he knew that the man lying in the doorway was Captain Gray, and not the appellant. A ballistics examination revealed that Captain Gray was killed by Officer Windham.

The appellant raises six grounds of error, alleging, in effect, that the State did not prove, as required by Tex. Penal Code Ann. § 19.02(a)(1), that the appellant acted with the intent to murder any of the peace officers.

■ To be considered criminal, an overt or voluntary act must be accompanied by criminal intent, *U.S. v. Lovely*, 77 F.Supp. 619, 621 (1948), rev'd on other grounds, 169 F.2d 386 (4th Cir. 1948). As stated by one federal court, "Criminal intent is the *sine qua non* of criminal responsibility," *Rent v. U.S.*, 209 F.2d 893, 900 (5th Cir. 1954). Following this same reasoning, the Court of Criminal Appeals stated in *Womble v. State*, 618 S.W.2d 59, 64 (Tex. Cr. App. 1981), that, ". . . homicide is punishable only where the State proves both voluntary conduct and a culpable mental state."

In the present Penal Code, there are four recognized mental states which can accompany an act and cause an individual to be criminally responsible for the act: 1) acting intentionally; 2) acting knowingly; 3) acting recklessly; and 4) acting with criminal negligence. Tex. Penal Code Ann. § 6.03.

■ In the appellant's first three grounds of error he complains that the trial court should have submitted three lesser included offense charges to the jury for its consideration. The alleged lesser offenses were aggravated assault, criminally negligent homicide, and involuntary manslaughter. A requested charge on a lesser included offense is necessary if there were testimony in the case that, if guilty at all, the defendant is guilty only of the lesser included offense. *Bingham v. State*, 630 S.W.2d 718 (Tex.App.—Houston [1st Dist.] 1982) *Watson v. State*, 605 S.W.2d 877 (Tex. Cr. App. 1980, on rehearing); *Daywood v. State*, 157 Tex.Cr.R. 266, 248 S.W.2d 479 (1952).

■ The cases have uniformly ruled that when a deadly weapon per-se is used in a deadly manner and death results, there is no need to give a charge on aggravated assault. In the instant case, the appellant engaged in a gun battle with the police in which he fired three shots into the office wherein the two men were hiding. He directed the shots in the direction of these men. These actions indicate more than merely aggravated assault. See, *Ruiz v. State*, 523 S.W.2d 691 (Tex. Cr. App. 1975); *Womble*, supra; *Simpkins v. State*, 590 S.W.2d 129, 134 (Tex. Cr. App. 1979); *Curtis v. State*, 573 S.W.2d 219 (Tex. Cr. App. 1978). We overrule the appellant's first ground of error, that a charge on aggravated assault should have been given.

The appellant claims in grounds of error two and three that he should have been afforded the opportunity to have the jury consider a charge on the lesser included offenses of criminally negligent homicide and involuntary manslaughter. Neither of these offenses requires as great an awareness on the part of the defendant as is required when a defendant is charged with intentionally and knowingly committing an act.

On original submission we held that the jury in this case should have been given the opportunity to decide whether the appellant was aware of a risk but consciously disregarded it, or should have been, but was not aware, of a risk that someone might be killed at the police station if he acted as he did. In brief, we held that charges on the two lesser included offenses of involuntary manslaughter and criminally negligent homicide should have been given. Having now been favored with the State's motion for rehearing, whereas at submission the State did not appear for argument, we withdraw our opinion on original submission, and we grant the State's motion for rehearing, vacating our former judgment and affirming the judgment of the trial court.

We have come to the foregoing conclusion after having reconsidered the proper application of the legal definitions of criminal negligence and recklessness to the actions of the appellant. Thus, we have decided that the question is not whether the actor, knowing his gun to be loaded and ready to shoot, and knowing that others probably have loaded guns, recognizes the great risk that death might result from a confrontation and fires his gun when he finds himself in such a confrontation. Rather, the question is whether he voluntarily fires the gun with the requisite culpable mental state.

More specifically, the information required to determine properly whether an individual was aware of substantial risk of death is his general knowledge of firearms, his knowledge of the particular firearms used, and knowledge of whether the gun is loaded. Under circumstances such as those in the case at bar, when a person is familiar with guns, knows that the particular gun being held is loaded, and acts intentionally in firing the gun, he cannot assert criminal negligence or recklessness as alternatives to a murder charge. A comparison of the cases cited in our earlier opinion and cases cited by the State in its motion for rehearing will demonstrate the application of this principle.

The case of *Kuykendall v. State,* 609 S.W.2d 791 (Tex. Cr. App. 1980) presents an illustrative example of the manner in which the Court of Criminal Appeals is applying the standard of criminal negligence and recklessness. The defendant, his girl friend, Cheryl, and a third friend, Garza, were out drinking together when they decided to buy some marihuana from the deceased. They went to his house, but the deceased did not answer their knock; they next went to a bar where they learned that the deceased was actually at home. Irritated by this news, they stopped by another friend's house to pick up a sawed-off shotgun and a pistol, and they then drove once again to the home of the deceased. Garza went inside the house and talked briefly with the deceased before leaving. In the meantime, the defendant had stepped out of the car and was standing in a position out of the line of vision from the doorway. When Garza came out, the defendant walked up to the screen door, and, as he opened it, the gun went off.

The defendant's explanation on the stand was that he went to the deceased's house, not to steal marihuana from him, but to collect money owed to him by the deceased. The defendant said he took the gun for protection because the deceased had pulled a gun on him before; he wanted to be prepared if that happened again. He also testified that he was working the hammer of the gun as he walked into the house. This he was doing despite a defect in the gun, of which he was aware, which could cause the gun to go off.

The Court of Criminal Appeals held that the defendant was aware of the risk sur-

rounding his conduct as he approached and entered the house:

> Stated another way, there was not enough evidence to raise an issue of reasonable doubt whether he was acting other than intentionally or knowingly, so that the jury could have found that appellant *ought* to have been, but was *not*, aware that his conduct would create a substantial and unjustifiable risk resulting in the death of the deceased. The defendant at no time expressly suggested he failed to perceive the obvious risk involved, nor does the testimony of any other witness, and directly to the point his friend and companion Chapman quotes him as saying, "I know what I'm doing... just stay here and make sure I'm okay." Defendant agreed that he was talking to Chapman while Garza went to see [the deceased], but he never denied the awareness of risk attributed to him by Chapman. *Id.* at 797.

The critical factor to the court is that there was no evidence that the defendant was not aware of what he was doing, whereas the defenses asserted by him denied any voluntary or *intentional* act.

In *Brooks v. State,* 548 S.W.2d 680, 682 (Tex. Cr. App. 1977), the defendant was convicted of voluntary manslaughter. On appeal he argued that the trial court erred in refusing to instruct the jury on the law of involuntary manslaughter, which requires a lesser culpable mental state. The facts reveal that the defendant was bringing $2,400 as ransom for his cousin, who was being held by Thomas and Ricky Lynn Meredith. They claimed that such sum was owed because of a marihuana deal which "turned sour." When the defendant arrived he was taken by Thomas Meredith to the car in which the defendant's cousin was being held. As they reached the car, Thomas Meredith reached in and was handed a pistol; he walked toward the defendant and grabbed the suitcase. A fight ensued, during which Meredith was killed.

At trial the defendant testified that he tried to get the gun to keep Meredith from killing him. The defendant steadfastly maintained that the gun was pointed at Meredith unintentionally and was fired unintentionally. From the foregoing evidence the Court of Criminal Appeals concluded that the trial court was correct in not giving an instruction on involuntary manslaughter. It was apparent that the defendant was not acting recklessly; he was quite aware of the danger that one of the two men might be killed and acted accordingly to protect himself. In short, he acted intentionally in his response to Meredith's advances. *Id.* at 683.

*Simpkins, supra,* gives us further direction concerning when an instruction on negligent homicide and an instruction on involuntary manslaughter should be given and when they need not be given. The appellant in *Simpkins* was visiting his home while on leave from the Army. One night he attended a fashion and talent show at the local high school. After the show, he approached a group of people and began exchanging unpleasant words with the deceased. Then the appellant left the group and went to his car with a friend where the appellant picked up a twelve-gauge shotgun. His friend grabbed the gun and it discharged. Some ten minutes later the appellant returned to the group, pointed the gun at the deceased and fired it. At trial, the defense tried to show that a struggle for the gun had occurred before the appellant fired the shot, thus attempting to prove that the appellant did not intend to shoot anyone. *Id.* 590 S.W.2d at 132.

In response to the appellant's contentions, the Court discussed the requirements of the Penal Code which abolish the old distinction between intentional and unintentional acts. Under the penal code, as now written, a person may act unintentionally, i.e. cause an unintended result, and still commit a criminal offense, provided he acts with knowledge, recklessness, or negligence. *Id.* at 133. Guiding us further, the Court says that the distinction to be drawn in determining whether the homicide is criminal is not whether the act is intentional or unintentional, but rather, whether the act is voluntary or involuntary. For the homicide

to be punishable, the evidence must show that the appellant committed a voluntary act with the requisite culpable mental state. The Court of Criminal Appeals concluded that the appellant was not entitled to an instruction on either of the requested charges because he acted voluntarily, was very familiar with firearms, and knew that the gun was loaded. He was not taken by surprise when the gun fired and, in fact, made it do so.

Coming to grips now with the case at bar, and applying the rule of *Simpkins,* the appellant would be guilty of murder, and not entitled to a charge on involuntary manslaughter or criminally negligent homicide, if he intentionally went into the Orange police station and voluntarily fired the gun, intending to do so. The question is not whether he intended to kill anyone, or whether he realized the likelihood that someone would be killed.

Coming now to a review of the cases cited by us in our original opinion, we recognize that each such case can be and should be distinguished from the case at bar by extenuating circumstances in the cited case. In *Branham v. State,* 583 S.W.2d 782 (Tex. Cr. App. 1979) there was a lover's quarrel between the appellant and her boyfriend. The two had quarreled earlier in the day and the deceased had fired a shot at her with the same pistol eventually causing his demise. Just before the fatal shot, according to the appellant's testimony, the deceased handed her the pistol and then began walking toward her. As she was backing away someone grabbed her from behind and the gun went off with its fatal result. The Court of Criminal Appeals concluded that the appellant was entitled to a charge on criminally negligent homicide because of four factors:

1) she did not think the gun was loaded;
2) she did not intend to fire the gun;
3) her finger was not on the trigger; and
4) the gun discharged accidentally when the appellant was grabbed from behind by a third party.

*Branham* is thus to be distinguished from the instant case wherein the appellant knew

the gun was loaded, and fired several shots in the direction of the police officers with no suggestion of the voluntary act of a third party causing the shots to be fired.

*Moore v. State,* 574 S.W.2d 122 (Tex. Cr. App. 1978), is quite similar to *Branham.* The appellant in *Moore,* shot and killed the deceased after the latter drove into her neighbor's yard while cursing the appellant and talking erratically. The appellant's neighbor had brought his shotgun out to protect them, in the event the deceased should attempt to harm them, and was standing, watching the deceased, when the appellant grabbed the gun, causing it to discharge almost instantaneously. Because the appellant testified that she was unfamiliar with firearms, that she had never seen Purcell with the shotgun before and thought that it was unloaded, and that she never intended to point the gun at the deceased or fire the gun at him, *Moore* is to be distinguished from the case at bar.

Summarizing, we conclude that there was abundant evidence to show that the appellant voluntarily pulled the trigger of his pistol, intending to fire at the officers. Neither his testimony that he did not intend to kill anyone nor the proof that he could have shot the police officers upon first opening the door to the office, shows that the appellant acted involuntarily, or unintentionally, in engaging in the gun battle resulting in Captain Gray's death. These facts merely serve to show that he did not enter the police station with the intention of killing anyone.

■    The appellant's final three grounds of error pertain to Tex. Penal Code Ann. §§ 6.04(a) and 6.03(a). Ground five presents the appellant's argument that the prosecutor should not have been allowed to voir dire the jury on § 6.04(a) because that section was not included in the indictment as a theory upon which the conviction would be based.

Section 6.04(a) states:
(a) A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or

concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient.

The appellant's claim that § 6.04(a) should have been included in the indictment as a theory upon which the conviction was based, was also addressed in the companion case to this one, *Blansett v. State,* 556 S.W.2d 322 (Tex. Cr. App. 1977), and rejected by the Court of Criminal Appeals. Noting that the section is merely supplementary, and secondary to those substantive sections in which offenses are defined, the Court concluded that § 6.04 need not be set out in the indictment. *See also McNeal v. State,* 600 S.W.2d 807, 808 (Tex. Cr. App. 1980).

Ground of error five is overruled.

■ Grounds four and six will be discussed together because they present similar claims, despite the fact that they involve different sections of the Penal Code. In ground four, the appellant urges us to find that, through the use of § 6.04(a), the State was allowed to convict the appellant for capital murder when its proof merely showed reckless conduct. The appellant contends in ground six that § 6.03(a) and the court's charge are unconstitutional because they shift the burden of proving intent to kill onto the appellant. We reject both contentions.

The appellant's position is that the State, through the use of § 6.04(a) showed only that the appellant intended to take a certain course of conduct, not that he intended the result of his conduct, and that the jury was allowed to find the appellant guilty of the result—the death of Captain Gray—based on evidence that only showed reckless conduct. Although the Court of Criminal Appeals discussed a similar contention in *Blansett,* supra, it is apparent that we should further clarify the matter.

As the appellant emphasizes in his brief, an accused convicted under § 19.03(a)(2) must be proven not only to have voluntarily taken a certain course of conduct, but to have desired the result of that conduct.

Admittedly, this task may be more difficult when the killing is committed by someone other than the appellant, but it is by no means impossible. The Court of Criminal Appeals quoted from a California Supreme Court case in explaining its result. *See People v. Gilbert,* 63 Cal.2d 690, 47 Cal.Rptr. 909, 408 P.2d 365 (1965), rev'd. on other grounds, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). We too shall rely on the case, but we will engage in a more detailed review of it because the key to understanding our conclusion, as well as the conclusion in *Blansett,* supra, is found in that opinion.

The accused in *People v. Gilbert,* was convicted for the death of his accomplice which occurred during a bank robbery shoot-out. 47 Cal.Rptr. at 914, 408 P.2d at 370. The evidence conclusively proved that the accomplice was killed by a police officer. 47 Cal.Rptr. at 917, 408 P.2d at 373. In wrestling with the concept of convicting an individual for a killing committed by another, the Court listed two principles that could be invoked to convict a defendant of first degree murder (capital murder in our situation): 1) there must be proof of intent to kill and 2) the killing must be attributable to the defendant or his accomplice.

Intent to kill may be inferred when a defendant engages, with wanton disregard for human life, in an act that involves a high degree of probability that it will result in death. Engaging in a gun battle is such an act.

In discussing the second principle, the California court had the following to say.

When the defendant or his accomplice, with conscious disregard for life, intentionally commits an act that is likely to cause death, and his victim, or a police officer, kills in response to such act, the defendant is guilty of murder. In such a case, the killing is attributable, not merely to the commission of a felony, but to the intentional act of the defendant or his accomplice committed with conscious disregard for life. Thus, the victim's self-defensive killing or the police officer's killing in performance of his duty cannot

be considered an independent intervening cause for which the defendant is not liable, for it is a reasonable response to the dilemma thrust upon the victim or the policeman by the intentional act of the defendant or his accomplice. 47 Cal.Rptr. at 917, 408 P.2d at 373.

At this point it would be appropriate to refer to the concept that, under our Penal Code, an accused may be held liable for the direct result of his own voluntary acts. Proof of intent to cause the result may be inferred from the accused's own acts. If intent were not inferrable from an accused's voluntary acts, it would be nearly impossible to hold an accused liable for the result of his acts.

Keeping in mind the above principles, we will summarize the evidence unquestionably proven at trial. There was testimony that the appellant, armed with an automatic pistol, consciously went to the police station with the intent to free his brother. His gun went off once while he was struggling with Captain Gray, then he was fired upon twice by the police officers in the dispatchers/booking room. A gun battle ensued in which the appellant slipped his hand through an opening between a bullet proof glass window and a shelf, and fired three shots at the men in the dispatcher's room. One of the bullets hit the top of the booking counter under which Officer Windham was crouching for cover. A second bullet went through a teletype machine and lodged in the frame of the door that opens into the small room behind the dispatcher's office where the dispatcher, Denton, was hiding. (Denton testified that he probably would have been hit had the bullet not stopped because his body was directly behind the spot in the frame in which the bullet lodged.) A third bullet was found in one of the walls of the office.

We conclude that there was ample basis upon which the jury could infer an intent to kill on the part of the appellant, and that the burden of proving intent, or lack thereof, was not foisted on the appellant.

Grounds of error four and six are overruled.

The appellee's motion for rehearing is granted, our opinion is withdrawn, and our former judgment vacated and set aside.

The trial court's judgment is affirmed.

SMITH and BASS, JJ., also sitting.