**Opinion filed August 10, 2023**



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00032-CR

_____

## COURTNEY CHELLE RICE, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 70th District Court**

**Ector County, Texas**

**Trial Court Cause No. A-19-1495-CR**

### M E M O R A N D U M   O P I N I O N

Appellant, Courtney Chelle Rice, was charged by indictment with the first-degree felony offense of murder of Jose Hernandez. TEX. PENAL CODE ANN. § 19.02(b)(1), (b)(2), (c) (West 2019). The jury found Appellant not guilty of the offense of murder but convicted her of the lesser-included offense of manslaughter. *See id.* § 19.04. The jury assessed Appellant's punishment at twenty years'

imprisonment in the Institutional Division of Texas Department of Criminal Justice and a $10,000 fine, and the trial court sentenced Appellant accordingly. We affirm the judgment of the trial court.

*Factual and Procedural History*

Jose Hernandez and Appellant had a complicated relationship. Appellant and her daughter testified that Hernandez had romantic feelings for Appellant but Appellant did not reciprocate. According to Appellant, however, after a bad plumbing issue forced her to find other living accommodations, the two entered into a lease agreement and Appellant moved into Hernandez's home with her teenage daughter. The living situation was contentious, and Appellant and Hernandez often argued. According to text messages extracted from Appellant's cell phone, Hernandez had threatened to kill himself if Appellant went "out to work" and left.

During their ongoing conflicts, Hernandez served Appellant with a notice for Appellant to vacate dated approximately two months prior to his death. On the same date, Appellant texted friends stating that she "seriously ha[s] thought of killing the landlord." Approximately ten days before the shooting death of Hernandez, Appellant also texted stating that Hernandez "says he will kill himself if I go out to work [and] leave here. I'm about to pick up the gun and do the job for him."

The day before Hernandez's death, Hernandez and Appellant left the home together. Appellant wanted to sell some inherited jewelry but was not successful; she had "high hopes" that "the jewelry was going to be a way out for [her]." But tempers flared between the two and they separated.

According to Appellant, she returned home around midnight and stated that Hernandez expressed frustration that Appellant wanted to leave. An argument ensued and Hernandez produced a gun. He tilted the gun upward, dropping bullets

out of the cylinder, and, put the gun to his head, Hernandez "pulled the trigger" but the gun failed to fire. He then offered the gun to Appellant with the suggestion that she play "Russian roulette" with him. After a brief struggle, Appellant took the gun from Hernandez. Appellant testified that she told him that she would give the gun back to him the next day. According to Appellant, she took the gun to her car and left because she "wanted to just throw it out." Instead, Appellant returned to the house with the gun. Appellant testified that she planned to put the gun "under [Appellant's] bed" while he slept. But upon entering his bedroom, Hernandez awoke "or he was already awake." He cursed at her and Appellant asked Hernandez, "[D]o you want to play F-----g Russian roulette?" Allegedly believing that the gun was unloaded, Appellant pointed it at Hernandez and pulled the trigger. The gun fired and Hernandez was struck in the head.[1] Appellant called 9-1-1 and Hernandez was transported to the hospital, where he died from the gunshot wound.

In three issues, Appellant argues that: (1) the trial court erred when it included an overbroad definition of "recklessly" in the abstract portion of the charge; (2) the trial court erred in admitting text messages during the punishment phase of trial over Appellant's objection; and, (3) there is insufficient evidence from which a rational juror could infer that she acted recklessly—the mens rea required for her manslaughter conviction—and, as a result, at most, there was sufficient evidence only of the lesser-included offense of criminally negligent homicide.

---

[1]Officer Shirley Hardy, a crime scene investigator on scene, testified that the blood spatter was "consistent where somebody was laying."

*Analysis*

I. *Jury Charge*

In Appellant's first issue, she contends that the overbroad definition of "recklessly" in the abstract portion of the charge constituted reversible error.

A. *Standard of Review for Alleged Charge Error*

A review of alleged jury-charge error involves two steps. *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015); *see also Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1985) (op. on reh'g); *Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005). First, we determine if there is any error; and second, if there is error, we must determine if the error is harmful requiring reversal. *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015); *Ngo*, 175 S.W.3d at 743–44.

Not all jury charge errors require reversal on appeal. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). If the charge is erroneous, then on appeal we must first determine if the defendant objected to the erroneous charge. *Id.* If the defendant objected to the erroneous charge, we will reverse if the record shows that the error caused "some harm." *Id.* Conversely, if the defendant failed to object, an appellate court may only reverse upon a finding of "egregious harm." *Id.* Egregious harm is harm that denies the defendant a fair and impartial trial. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013). This is a "high and difficult" standard to meet, and the harm must be shown in the record. *Reeves*, 420 S.W.3d at 816; *Vega v. State*, 394 S.W.3d 514, 521 (Tex. Crim. App. 2013).

B. *Conduct Elements*

Section 6.03 of the Texas Penal Code provides four culpable mental states for offenses: intentionally, knowingly, recklessly, and criminal negligence. *See* PENAL § 6.03 (West 2021). The Court of Criminal Appeals requires trial courts to limit the

4

culpable mental states in their charge only to the "conduct elements" for the specific offense on trial. *Price*, 457 S.W.3d at 441; *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989). In this regard, Section 6.03 delineates three "conduct elements" which may be involved in a criminal offense: (1) the nature of the conduct; (2) the result of the conduct; and (3) the circumstances surrounding the conduct. *See Price*, 457 S.W.3d at 441; *see also Young v. State*, 341 S.W.3d 417, 423–24 (Tex. Crim. App. 2011).

The crux of the "conduct elements" question is what makes the conduct illegal. For example, "nature of conduct" crimes, such as gambling and assault by threat, focus on the nature of the crime. *Peek v. State*, 494 S.W.3d 156, 162 (Tex. App.—Eastland 2015, pet. ref'd) (citing *McQueen*, 781 S.W.2d at 603; *Zuliani v. State*, 383 S.W.3d 289, 298 (Tex. App.—Austin 2012, pet. ref'd)). "Result of conduct" crimes, such as murder, focus on the result of the act. *McQueen*, 781 S.W.2d at 603 (collecting cases). "Circumstances of conduct" crimes, such as unlawfully discharging a firearm, focus on the surrounding circumstances of the act. *Young*, 341 S.W.3d at 423 (unlawfully discharging a firearm).

C. *Result-Oriented Offenses*

Murder and manslaughter are result-oriented offenses. *See Britain v. State*, 412 S.W.3d 518, 520 (Tex. Crim. App. 2013); *Cavazos v. State*, 382 S.W.3d 377, 384 (Tex. Crim. App. 2012); *Cook v. State*, 884 S.W.2d 485, 490 (Tex. Crim. App. 1994). On appeal, Appellant argues that the trial court's definition of "recklessly" for the lesser-included offense of manslaughter was overbroad. A person commits the offense of manslaughter if she recklessly causes the death of an individual. PENAL § 19.04(a). Thus, the mens rea at issue is "recklessly." As the Amarillo court of appeals has said:

[W]hile, according to the statutory definition of reckless, one may be reckless regarding the circumstances surrounding his conduct or the result of his conduct, the crime defined in [Section] 19.04(a) simply encompasses recklessness viz the result of the accused's conduct. In other words, the legislature, in defining manslaughter, was not concerned with whether the accused was aware of the circumstances surrounding his conduct but rather with whether his conduct resulted in death. So, a trial court, when charging the jury on manslaughter, is not obligated to instruct the jury on both ways in which one can be reckless.

*Richie v. State*, 149 S.W.3d 856, 857 (Tex. App.—Amarillo 2004, no pet.) (internal citation omitted) (citing *Brown v. State*, 91 S.W.3d 353, 359–60 (Tex. App.—Eastland 2002, no pet.)).

### D. *The Abstract Portion of the Trial Court's Charge Defines "Recklessly" Too Broadly*

The trial court's charge defined manslaughter as follows: "A person commits MANSLAUGHTER if she recklessly causes the death of an individual." That is a correct statutory definition of the elements for this result-oriented offense. However, the trial court provided the culpable mental state of recklessness as it is broadly defined in Section 6.03(c):

A person acts recklessly, or is reckless, with respect to circumstances surrounding her conduct or the result of her conduct when she is aware of but consciously disregards a substantial and unjustifiable risk that circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

*See* PENAL § 6.03(c). Rather than limiting the definition to the result of the conduct as applicable to manslaughter, the definition of reckless references not only result of conduct, but also the circumstances surrounding the conduct. Appellant argues that this constituted egregious harm.

6

Importantly, the application paragraph in the charge applies "recklessly" only in the context of a result-oriented offense:

> Now, if you find from the evidence beyond a reasonable doubt that on or about April 2nd, 2019, in Ector County, Texas, the defendant, COURTNEY CHELLE RICE, did then and there recklessly cause the death of an individual, namely Jose Hernandez, by shooting him with a firearm, then you will find the defendant guilty of the lesser included offense of MANSLAUGHTER. Unless you find that the defendant is guilty of manslaughter beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict "Not Guilty."

Appellant asserts that since manslaughter is a result-oriented offense, the trial court's inclusion of the "circumstances of conduct" language in the definitions of "recklessly" was not necessary and, as a result, the trial court erred. But Appellant did not object to this instruction at trial. Assuming, without deciding, that the trial court's charge was erroneous, we must use an egregious harm standard to evaluate the alleged error. *Almanza*, 686 S.W.2d at 171; *see McGee v. State*, No. 11-13-00124-CR, 2015 WL 3799362, at *3–5 (Tex. App.—Eastland June 11, 2015, no pet.) (mem. op., not designated for publication) (addressing harm where application paragraph correctly limited overbroad abstract definition of culpable mental state to "result of conduct," without holding that charge error existed). For egregious harm to exist, "the record must show that a defendant has suffered actual, rather than merely theoretical, harm from jury instruction error. Errors that result in egregious harm are those that affect 'the very basis of the case,' 'deprive the defendant of a valuable right,' or 'vitally affect a defensive theory.'" *Ngo*, 175 S.W.3d at 750 (footnote omitted).

### E.  *Assessing Alleged Egregious Harm*

When the defendant or his trial counsel fails to make a timely and proper objection to the trial court's charge, we will reverse only if the error was so egregious and created such harm that the defendant was deprived of a fair and impartial trial. *Villareal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015); *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009); *Almanza*, 686 S.W.2d at 171. "Charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Villareal*, 453 S.W.3d at 433; *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006). In our egregious harm analysis, we examine the relevant portions of the record which must show that Appellant suffered actual harm, as opposed to theoretical harm, because of the error. *See Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016). Neither party bears the burden of showing harm or the lack thereof under this standard. *Villareal*, 453 S.W.3d at 433 (citing *Warner v. State*, 245 S.W.3d 458, 464 (Tex. Crim. App. 2008)). To assess egregious harm, we review what the Texas Court of Criminal Appeals has referred to as "the *Almanza* factors": (1) the jury charge itself, (2) the state of the evidence, including weight and probative value, (3) counsel's arguments, and (4) any other relevant information in the trial record. *See Vega*, 394 S.W.3d at 521. These factors guide our analysis.

#### 1.  *The Charge as a Whole*

The first *Almanza* factor requires that we review the trial court's charge as a whole. We have previously noted that manslaughter was correctly defined in the trial court's charge. Further, we observed that the definition given for "recklessly" was overbroad because it included circumstances of conduct and manslaughter is a result-oriented offense. But the application paragraph provided in the charge applied

"recklessly" only in the context of a result-oriented offense. Application paragraphs apply "the pertinent penal law, abstract definitions, and general legal principles to the particular facts and the indictment allegations." *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012). In assessing harm from the inclusion of improper elements in the abstract definitions of culpable mental states, a reviewing court "may consider the degree, if any, to which the culpable mental states were limited by the application portions of the jury charge." *Hughes v. State*, 897 S.W.2d 285, 296 (Tex. Crim. App. 1994) (quoting *Cook*, 884 S.W.2d at 492 n.6).

Only the result-of-conduct element in the charge's abstract definition of "recklessly" applied to the lesser-included offense of manslaughter. And, read in conjunction with the application paragraph, the jury was directed to the correct conduct portion of the definition. Unless the record indicates to the contrary, and in this case it does not, we presume that the jury followed the trial court's instructions. *See Taylor v. State*, 332 S.W.3d 483, 492 (Tex. Crim. App. 2011); *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005); *Smith v. State*, 631 S.W.3d 484, 500 (Tex. App.—Eastland 2021, no pet.). Therefore, when the trial court's charge is read as a whole and in proper context, we conclude that the application portion of the court's charge correctly limited the culpable mental states pertaining to the "result of conduct" element, and we conclude that this *Almanza* factor does not weigh in favor of finding that Appellant suffered egregious harm.

### 2. *The State of the Evidence*

The second *Almanza* factor focuses on the evidence presented at trial. The State concedes that the broad definition of recklessly in the charge related directly to the culpable mental state with which Appellant acted when she killed Hernandez, and therefore, "could potentially support a harm finding." A review of the record

demonstrates evidence of considerable weight as to Appellant's culpable mental state. Based on the evidence presented, it was within the jury's discretion whether to believe that: (1) Appellant knew that the gun had been loaded; (2) she knew at least some of the bullets had been removed—she did not ensure that all bullets had been removed and considering Hernandez's game of "Russian roulette" it is reasonable to presume that Hernandez believed that at least one bullet was still in the gun; (3) Appellant knew that the gun was still potentially lethal to the point of taking it away from Hernandez and attempting to hide it—the mere act of pointing a gun at another person could be perceived as reckless, much less pulling the trigger.

The record also shows that immediately before his death Appellant asked Hernandez if he wanted to play Russian roulette—implying that bullets were still in the gun. The gun had been in Appellant's possession long enough to contemplate numerous places in which to hide it and to leave and distance herself from the situation, but she instead chose to return with the gun in-hand. Generally, leading up to and around the time of the murder, the relationship included Hernandez's threats of suicide and Appellant's texts referencing "killing the landlord" and that she could "pick up the gun and do the job for him." Appellant testified to deliberately pointing a gun at Hernandez and intentionally pulling the trigger. To the 9-1-1 dispatcher, Appellant used phrases that conveyed her intent and state of mind, including statements that she "had had it," had been "driven . . . crazy" and "couldn't take it anymore." There is ample evidence upon which the jury could have reasonably concluded that Appellant acted at least recklessly with respect to causing Hernandez's death. Thus, the second *Almanza* factor does not support a finding that Appellant was harmed, egregiously or otherwise.

### 3. *The Arguments of Counsel*

The third *Almanza* factor pertains to the arguments of trial counsel. In weighing this factor, we must determine whether any statements made by the State, Appellant's trial counsel, or the trial court exacerbated or ameliorated the complained-of charge error. *Arrington v. State*, 451 S.W.3d 834, 844 (Tex. Crim. App. 2015); *Almanza*, 686 S.W.2d at 171. The State's closing argument focused on convicting Appellant for murder, and it did not discuss the definition of "recklessly." The State never argued for a conviction based on any conscious disregard by Appellant of a substantial and unjustifiable risk that certain circumstances existed at the time Appellant pulled the trigger. Instead, the prosecution centered its argument on Appellant intentionally causing Hernandez's death. Appellant's trial counsel argued that there was an absence of even a reckless mental state—arguing that, as a result, the proper verdict for the murder charge was "not guilty."

Accordingly, the arguments of trial counsel did not focus on the "circumstances of conduct" aspect of the definition of "recklessly" and, in fact, both arguments appear to be calculated to draw the jury's attention away from considering a manslaughter conviction. The State's argument was directed toward obtaining a murder conviction, while Appellant's argument focused on achieving an acquittal. As a result, "the third factor *weighs significantly* in favor of a finding of no egregious harm." *See Gelinas v. State*, 398 S.W.3d 703, 709 (Tex. Crim. App. 2013) (emphasis added); *French v. State*, 563 S.W.3d 228, 236, 238 (Tex. Crim. App. 2018) (noting that the State's final arguments focused the jury's attention such that the charge error was harmless).

#### 4. *Other Relevant Information in the Record*

Finally, the fourth *Almanza* "catch-all" factor requires that we consider any other relevant information in the record that would assist in our determination of whether Appellant suffered egregious harm as a result of the complained-of charge error. *Gelinas*, 398 S.W.3d at 707; *Almanza*, 686 S.W.2d at 171.

Here, the record shows that the jury never inquired of or submitted any note or other form of communication to the trial court regarding the alleged deficiencies in the charge to which Appellant now complains. *See Lopez v. State*, 314 S.W.3d 70, 73 (Tex. App.—Waco 2010, no pet.); *Shavers v. State*, 985 S.W.2d 284, 292 (Tex. App.—Beaumont 1999, pet. ref'd). Therefore, it is unlikely that the jury was influenced, confused, or misled by the trial court's instructions that Appellant now complains were erroneous. Further, Appellant does not point to, nor have we found, other information in the record that would either assist in our analysis or support a finding of egregious harm.

Because there is no other relevant information in the record before us that shows or suggests confusion or that the jury's verdict was influenced or affected by the complained-of instructions, we conclude that the fourth *Almanza* factor does not weigh in favor of finding that Appellant suffered egregious harm.

#### 5. *The Almanza factors together*

Assuming without deciding that, as to manslaughter, the trial court provided an erroneously broad definition for "recklessly" in the abstract portion of the charge because it included circumstances of conduct language, we conclude that on this record Appellant was not harmed by any such error. Thus, as in *Campbell*, after "[t]hrough consideration of the full *Almanza* factors, it is apparent that any harm to Appellant as a result of the error was merely theoretical." *See Campbell v. State*,

12

664 S.W.3d 240, 254 (Tex. Crim. App. 2022). Accordingly, we overrule Appellant's first issue.

II. *Admission of Text Messages*

In Appellant's second issue, she argues that the trial court abused its discretion when it admitted, during the punishment phase, three text message exchanges. Appellant argues that the State failed to provide proper notice of its intention to use this evidence at trial and that these texts were more prejudicial than probative.

To preserve error for appellate review, Appellant's trial counsel must make a timely and specific objection to the trial court. TEX. R. APP. P. 33.1(a); *Turner v. State*, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991). The objection at trial must correspond with the issue on appeal. *Turner*, 805 S.W.2d at 431. In this regard, "[a]n objection stating one legal basis may not be used to support a different legal theory on appeal." *Edwards v. State*, 97 S.W.3d 279, 287 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd).

Appellant did not object at trial to the admission of this evidence based on a lack of notice. Instead, Appellant's objection was on other grounds:

> [STATE]: These statements were, were noticed to the Defense. They were put on notice prior to the, the trial.
>
> [DEFENSE COUNSEL]: That's exactly right. Well-spoken.
>
> . . . .
>
> [THE COURT]: So is your objection - - your legal objection - -
>
> [DEFENSE COUNSEL]: I'm saying I object it is not a bad act, or wrong, contemplated by 37.08 [sic]. And should not be allowed into evidence. The prejudice that it will arouse in this Jury is such that this should not be permitted under that statute.

13

Therefore, to the extent that Appellant argues she did not receive notice, we overrule her issue because she failed to preserve the issue for our review.

Trial counsel's argument that the text messages are "not bad acts" as contemplated by Article 37.07 of the Code of Criminal Procedure, is not briefed by Appellant and is therefore waived. *See Wolfe v. State*, 509 S.W.3d 325, 343–45 (Tex. Crim. App. 2017) ("[A]n appellant is the master of his or her own destiny with respect to what issues the court of appeals is required to address. . . ." Accordingly, "[w]hen an appellant has narrowed [his] arguments on appeal to address only a particular basis for disturbing a trial court's ruling, it is not for the appellate court to then scour the record in search of other possible bases for reversing the trial court's ruling on appeal."). Appellant briefly argues that these text messages are more prejudicial than probative, and Appellant's trial counsel raised objections consistent with Appellant's prejudice argument on appeal. Our review is thus limited to analyzing whether these text messages should have been excluded under Rule 403 of the Texas Rules of Evidence.

We review the trial court's exclusion of evidence under an abuse of discretion standard. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). A trial court abuses its discretion when it acts without reference to any guiding rules and principles or when it acts arbitrarily or unreasonably. *Id.* (citing *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)). Therefore, we uphold a trial court's ruling on admissibility if it is within the "zone of reasonable disagreement." *Inthalangsy v. State*, 634 S.W.3d 749, 754 (Tex. Crim. App. 2021). The court in *Sanders v. State* eloquently states the purpose of Rule 403 in reference to punishment:

> Rule 403 states that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.

14

> Even if punishment evidence is otherwise admissible under article 37.07, it may be excludable under rule 403.
>
> A rule 403 analysis should include, but is not limited to, considering the probative value of the evidence; the potential of the evidence to impress the jury in some irrational, indelible way or to suggest a decision on an improper basis; the time the proponent needs to develop the evidence; and the proponent's need for the evidence. "When a trial court tests and determines that the balance is a close one, it should favor admission, in keeping with the presumption of admissibility of relevant evidence."

*Sanders v. State*, 422 S.W.3d 809, 814-15 (Tex. App.—Fort Worth 2014, pet. ref'd) (internal citations omitted).

The text messages admitted into evidence were relevant to the punishment to be assessed against Appellant because of their impeachment value. Appellant testified that she "loved him very much as a friend." The text messages, in which she called Hernandez various slurs of an ethnic nature and also referred to him in a negative manner, were probative to rebut Appellant's testimony that they had a loving relationship. The State did not spend an excessive amount of time developing the evidence; once the text messages were read into the record, the State passed the witness. Although the use of such language might present some degree of prejudice, it was not unreasonable for the trial court to conclude that the probative value of the text messages was not substantially outweighed by a danger of unfair prejudice. TEX. R. EVID. 403; *see Sanders*, 422 S.W.3d at 816. We hold that the trial court did not abuse its discretion in admitting these text messages. Appellant's second issue is overruled.

III. *Sufficiency of the Evidence*

In Appellant's third issue, she argues that there was insufficient evidence from which a rational juror could infer that she acted recklessly, and, as a result, at most,

there was sufficient evidence only of the lesser included offense of criminally negligent homicide. Because Appellant does not contest any other elements of her conviction, we limit our review accordingly.

We review the sufficiency of the evidence under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) ("Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction."); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Under this standard, we review all the evidence in the light most favorable to the jury's verdict and decide whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319.

A jury may draw reasonable inferences regarding the ultimate facts from basic facts. *Lacour v. State*, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000). In determining whether the evidence supports a finding of recklessness, a statement that a defendant did not intend to kill the victim "cannot be plucked out of the record and examined in a vacuum." *Godsey v. State*, 719 S.W.2d 578, 584 (Tex. Crim. App. 1986). If a defendant points a gun at another person, a jury may infer a reckless state of mind, even if the defendant believes the gun is unloaded. *Guzman v. State*, 188 S.W.3d 185, 193 (Tex. Crim. App. 2006); *see also Gahagan v. State*, 242 S.W.3d 80, 86–87 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (collecting cases where the court upheld jury findings that a defendant consciously disregarded a substantial and unjustifiable risk in situations involving an alleged accidental discharge of a firearm.).

Here, Appellant concedes that she pointed the gun at Hernandez, but she also contends she had never owned or used a firearm. Appellant's lack of knowledge concerning firearms is some evidence that she was not consciously aware of the risk that she presented. *See Branham v. State*, 583 S.W.2d 782, 784–85 (Tex. Crim. App. [Panel Op.] 1979). In *Branham*, the shooter had never handled a gun before the incident that resulted in the victim's death, and the gun discharged when the shooter was grabbed from behind. *Id.* at 783–84. The Court of Criminal Appeals held that the trial court erred in not including an instruction on criminally negligent homicide. *Branham*, however, is inapposite. The question presented here is not whether there is sufficient evidence to include an instruction on criminally negligent homicide. Rather, the question on appeal is whether a rational juror could infer beyond a reasonable doubt that Appellant acted recklessly and thereby consciously disregarded a substantial and unjustifiable risk that Hernandez's death would occur.

Despite Appellant's testimony that she was unaware of firearm safety, Appellant admitted that she had a pink handgun in her possession that was gifted to her. In addition, her response to the question "[h]ave you ever shot a gun" was "Have I ever shot a gun? I have a rifle." Appellant also admitted that she went into the bedroom to "show [Hernandez] how [Appellant] felt," and "[p]ointed the gun at him and said this is how it feels to play Russian roulette." Even if Appellant alleges that she did not understand how to use the gun, her testimony shows that she was conscious of the risk she took.

We may not substitute our judgment for that of the jury by reevaluating the weight and credibility of the evidence. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). We defer to the jury's responsibility to resolve any conflicts in the evidence, to weigh the evidence, and to draw reasonable inferences from the

evidence.  *See Hooper*, 214 S.W.3d at 13; *King*, 29 S.W.3d at 562.  The jury alone decides whether to believe witness testimony, and it is solely responsible for resolving any conflicts in the evidence.  *See Hooper*, 214 S.W.3d at 13; *Young v. State*, 358 S.W.3d 790, 801 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd).  In conducting a sufficiency review, "[w]e do not engage in a second evaluation of the weight and credibility of the evidence, but only ensure that the jury reached a rational decision." *Young*, 358 S.W.3d at 801.  Accordingly, we assume that the jury resolved all conflicting evidence in support of their verdict.

We have thoroughly reviewed of all of the evidence presented, and we conclude that a rational juror could infer and find beyond a reasonable doubt that Appellant consciously disregarded a substantial and unjustifiable risk that Hernandez's death would occur.  Appellant's third issue is overruled.

*This Court's Ruling*

We affirm the judgment of the trial court.

W. BRUCE WILLIAMS

JUSTICE

August 10, 2023

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.