# PD-0600-15

PD-0600-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 6/17/2015 4:50:21 PM
Accepted 6/19/2015 12:23:06 PM
ABEL ACOSTA
CLERK

P.D.R. # _____

C.O.A. NO. 11-12-00319

TO THE

COURT OF CRIMINAL APPEALS

OF TEXAS

KEVIN ROYCE PEEK,

Appellant/Petitioner

VS.

THE STATE OF TEXAS,

Appellee

PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

June 19, 2015

ABEL ACOSTA, CLERK

CONNIE J. KELLEY
Attorney for Appellant/Petitioner
1108 Lavaca #110-221
Austin, Texas  78701
State Bar Number 11199600
(512) 445-4504
(512) 478-2318 (fax)
warrentucker@grandecom.net

## IDENTITY OF JUDGE, PARTIES AND
## COUNSEL PURSUANT TO Rule 68.4(a)
## TEXAS RULES OF APPELLATE PROCEDURE

Party and Appellee's Counsel:
Michael Murray
Brown County District Attorney
200 S. Broadway
Brownwood, TX 76801

State's Trial Attorney:
Michael Murray
Brown County District Attorney
200 S. Broadway
Brownwood, TX 76801

Party/Defendant:
Kevin Royce Peek
Texas Department of
Criminal Justice –
Institutional Division

Defendant's Trial Attorney:
Patrick Howard
Attorney at Law
P.O. Box 74
Bangs, TX 76832

Appellant's Attorney:
Connie J. Kelley
Attorney at Law
1108 Lavaca #110-221
Austin, Texas 78701

The Honorable Frank Griffin presided at trial.

i

# TABLE OF CONTENTS

Page

Identity of Judges, Parties and Counsel ........................................................................i

Index of Authorities ........................................................................iv

Statement Regarding Oral Argument ........................................................................1

Statement of the Case........................................................................1

Statement of Procedural History........................................................................1

Ground for Review........................................................................2

## GROUND FOR REVIEW NO. ONE

IS A DEFENDANT ENTITLED TO HAVE A RESULT-OF-CONDUCT DEFINITION OF "WITH INTENT" INCLUDED IN THE JURY CHARGE WHENEVER THE CHARGE ALLOWS FOR CONVICTION AS A PARTY UNDER THE THEORY THAT, ACTING WITH INTENT TO PROMOTE OR ASSIST COMMISSION OF THE OFFENSE, THE DEFENDANT AIDED THE PRIMARY ACTORS TO COMMIT THE OFFENSE, WHERE THERE WAS EVIDENCE THAT THE AID PROVIDED WAS ESSENTIAL TO COMMISSION?

Argument ........................................................................ 2 - 5

Prayer for Relief ...............................................................................5

## TABLE OF CONTENTS (cont.)

<u>Page</u>

Certificate of Service ......................................................................5

Certificate of Compliance ..............................................................6

Opinion of the Court of Appeals...............................................Appendix

# INDEX OF AUTHORITIES

Page

Cases:

Flanagan v. State, 675 S.W.2d 734 (Tex. Crim. App. 1982)...............................3, 4

In re State ex rel. Weeks, 391 S.W.3d 117 (Tex. Crim. App. 2013)..........................4

Nava v, State, 415 S.W.3d 289 (Tex. Crim. App. 2013).............................................3

Villarreal v. State, 286 S.W.3d 321 (Tex. Crim. App. 2009)....................................4

Statutes and Rules:

Health & Safety Code,
    §481.112.......................................................................................................4

Penal Code,
    §6.03...........................................................................................................3
    §7.02......................................................................................................3, 4
    §15.01.........................................................................................................4

Texas Rules of Appellate Procedure,
    Rule 66.3(b) ...............................................................................................3

## STATEMENT REGARDING ORAL ARGUMENT

The issues raised herein can be adequately addressed in briefs from the parties.

## STATEMENT OF THE CASE

On September 7, 2012, after a plea of not guilty, Appellant, Kevin Royce Peek, was found guilty by a jury in the 35th Judicial District Court of Brown County, Texas, of possession of a controlled substance, methamphetamine, in amount of four grams or more but less than 200 grams with the intent to deliver. (C.R. at 97-99). He was sentenced by the jury to life in the institutional division of the Texas Department of Criminal Justice on September 7, 2012. (C.R. at 97-99). A motion for new trial was filed by trial counsel on September 18, 2012. (C.R. at 101-103). The motion was denied on October 15, 2012. (C.R. at 109). Notice of Appeal was filed by trial counsel on October 16, 2012. (C.R. at 110). Trial counsel served as appellate counsel until allowed by this Court to withdraw as attorney of record. (Suppl. Rec.). Connie J. Kelley was subsequently appointed to represent Appellant on appeal. (Suppl. Rec.).

## STATEMENT OF PROCEDURAL HISTORY

The opinion of the Court of Appeals was handed down on April 16, 2015. No motion for rehearing was filed.

1

<u>GROUND FOR REVIEW NO. ONE</u>

IS A DEFENDANT ENTITLED TO HAVE A RESULT-OF-CONDUCT DEFINITION OF "WITH INTENT" INCLUDED IN THE JURY CHARGE WHENEVER THE CHARGE ALLOWS FOR CONVICTION AS A PARTY UNDER THE THEORY THAT, ACTING WITH INTENT TO PROMOTE OR ASSIST COMMISSION OF THE OFFENSE, THE DEFENDANT AIDED THE PRIMARY ACTORS TO COMMIT THE OFFENSE, WHERE THERE WAS EVIDENCE THAT THE AID PROVIDED WAS ESSENTIAL TO COMMISSION?

<u>ARGUMENT</u>

<u>GROUND FOR REVIEW NO. ONE</u>

IS A DEFENDANT ENTITLED TO HAVE A RESULT-OF-CONDUCT DEFINITION OF "WITH INTENT" INCLUDED IN THE JURY CHARGE WHENEVER THE CHARGE ALLOWS FOR CONVICTION AS A PARTY UNDER THE THEORY THAT, ACTING WITH INTENT TO PROMOTE OR ASSIST COMMISSION OF THE OFFENSE, THE DEFENDANT AIDED

2

THE PRIMARY ACTORS TO COMMIT THE OFFENSE, WHERE THERE WAS EVIDENCE THAT THE AID PROVIDED WAS ESSENTIAL TO COMMISSION?

This petition for discretionary review should be granted because the Court of Appeals has decided an important question of state law that has not been but should be, settled by this Court. See T.R.A.P. Rule 66.3(b).

In Nava v. State, this Court held that the words "acting with intent to promote or assist the commission of the offense" in Penal Code §7.02(a)(2) "clearly mean, at a minimum, that a defendant must act intentionally with respect to the result elements of a result-oriented offense." Nava v. State, 415 S.W.3d 289, 298-299 (Tex. Crim. App. 2013). Can those words also mean that irrespective of the offense involved, a defendant who aids primary actors in a way that is essential to the commission of the offense, and does so with the intent to promote or assist the commission of the offense, is entitled to a result-of-conduct definition of "with intent" in the jury charge? See P.C. §6.03(a). It cannot be said that it was not the "conscious objective or desire" of such a defendant to "cause the result" of his conduct, which was that the offense was actually committed by the primary actors due to the aid the defendant provided. See Id.

In Nava this Court discussed its holding in Flanagan v. State which construed language in the criminal attempt statute that Nava recognized as being similar to that of §7.02(a)(2). Nava v. State, 415 S.W.3d at 299, f.n. #22, Flanagan v. State, 675 S.W.2d 734, 740-741 (Tex. Crim. App. 1982) and P.C. §15.01. Penal Code §15.01(a) requires that a person act "with specific intent to commit an offense." Id. Flanagan held that the statute required the actor to possess intent with respect to the result even if the object crime did not itself require intent with respect to the result. Id. Similar reasoning applies to the issue of whether a defendant such as Appellant, who allegedly supplied aid essential to the commission of the charged offense with intent to promote or assist the commission of the offense, is entitled to a result-of-conduct definition of "with intent" in the jury charge. See P.C. §7.02(a)(2).

A jury charge must instruct the jury on the statutory definitions of terms that affect the meaning of an element of the offense. Villarreal v. State, 286 S.W.3d 321, 329 (Tex. Crim. App. 2009) Party liability is as much an element of the offense as the enumerated elements prescribed in a statute that defines a particular crime. In re State ex rel. Weeks, 381 S.W.3d 117, 124 (Tex. Crim. App. 2013). Given that, as the Court of Appeals points

4

out, P.C. §7.02(a)(2) has its own culpable mental state of "with intent", it is irrelevant whether Health & Safety Code, §481.112 is a conduct-oriented or result-oriented crime when determining whether a result-of-conduct definition of "with intent" should be included in the jury charge. The Court of Appeals erred in holding that Appellant was not entitled to a result-of-conduct definition in the charge.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, PREMISES CONSIDERED, Appellant requests that this Court grant this petition for discretionary review and reverse the judgment of the Court of Appeals.

Respectfully submitted,

/s/ Connie J. Kelley
Connie J. Kelley
Attorney for Appellant
1108 Lavaca, #110-221
Austin, Texas 78701
(512)445-4504
(512)478-2318 (fax)
warrentucker@grandecom.net
State Bar No. 11199600

<u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the foregoing was served on

5

Michael Murray, District Attorney, at 200 S. Broadway, Brownwood, Texas 76801 by regular mail on this 17th day of June, 2015.

/s/ Connie J. Kelley
Connie J. Kelley

## CERTIFICATE OF COMPLIANCE

This is to certify that the foregoing document is in 14 point font, with the exception of footnotes, which are in 12 point font. The word count of the foregoing document is 858 words, which is in compliance with T.R.A.P. Rule 9.4.

/s/ Connie J. Kelley
Connie J. Kelley

APPENDIX
OPINION OF THE COURT OF APPEALS



## In The

# Eleventh Court of Appeals

_____

## No. 11-12-00319-CR

_____

### KEVIN ROYCE PEEK, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause No. CR21821**

### O P I N I O N

The jury convicted Kevin Royce Peek of possession of four grams or more but less than 200 grams of methamphetamine with the intent to deliver in a drug-free zone. Appellant pleaded true to two enhancement allegations. The jury found both enhancement allegations to be true, and it assessed Appellant's punishment at confinement for life in the Institutional Division of the Texas Department of Criminal Justice. Appellant challenges his conviction in five issues. We affirm.

*Background Facts*

Appellant does not challenge the sufficiency of the evidence to support his conviction for possession of four grams or more but less than 200 grams of methamphetamine with intent to deliver. He does challenge the sufficiency of the evidence to establish that he committed the offense in a drug-free zone. We will briefly summarize the evidence at trial to provide context for Appellant's issues on appeal.

On November 9, 2011, Detective Shawn Dibrell and Officer Stephanie Hale of the Early Police Department were working drug interdiction in an unmarked police vehicle. At about 3:15 p.m., they observed a vehicle that had an expired registration. The officers followed the vehicle. Detective Dibrell activated his lights to stop the driver of the vehicle. The officers saw three occupants in the vehicle. Officer Dibrell observed the front-seat passenger moving from side to side in the vehicle. Officer Dibrell believed that the passenger might be grabbing a weapon or hiding something. Eventually, the driver pulled the vehicle to the side of the road and stopped. Detective Dibrell called for backup. Chief David Mercer and Officer Amanda Williams arrived at the scene.

The officers cautiously approached the vehicle and contacted the occupants. Detective Dibrell turned on his audio recorder. Appellant was in the driver's seat; Appellant's brother, James Kirby Peek, was in the front passenger's seat; and Hector Gonzales was in the backseat behind Kirby. Appellant reached under his lap, removed a syringe, and dropped it to the floor. For safety reasons, the officers had Appellant, Kirby, and Gonzales exit the vehicle, and the officers handcuffed them. The officers searched Appellant, Kirby, and Gonzales for weapons. Detective Dibrell found marihuana and a Q-tip in one of Appellant's pants pockets. Detective Dibrell testified that cotton from Q-tips is commonly used as a filter in connection with injecting methamphetamine. Officer Williams found a bag that

contained three small Ziploc bags full of methamphetamine and twenty-nine empty Ziploc bags in one of Kirby's shoes. The three bags contained about sixteen grams of methamphetamine. Testing of the substances at the Department of Public Safety Laboratory in Abilene confirmed that the seized substances were methamphetamine. Officer Hale found a pipe that contained methamphetamine residue in one of Gonzales's shoes.

Appellant told Detective Dibrell that he felt sick and dehydrated. Detective Dibrell said that Appellant turned "white as a ghost" and could barely stand up. Detective Dibrell gave Appellant something to drink.

Detective Dibrell gave *Miranda*[1] warnings to Appellant, Kirby, and Gonzales. They all told Detective Dibrell that they wanted to talk to him.

Appellant told Detective Dibrell that he had driven Kirby and Gonzales to Granbury so that Kirby and Gonzales could obtain methamphetamine. Appellant told Detective Dibrell that he knew methamphetamine was inside the vehicle.

On the following day, Detective Dibrell took a recorded statement from Appellant. During the statement, Appellant acknowledged that he took Kirby and Gonzales to Cindy Webb's trailer house in Granbury so that Kirby and Gonzales could get methamphetamine from Webb. According to Appellant, he believed that Kirby planned to get about four grams of methamphetamine from Webb. After the group arrived at Webb's house, Kirby left with Webb and two men to obtain methamphetamine. Appellant and Gonzales stayed at Webb's house. Kirby and the others returned to Webb's house about five hours later. Appellant said that, at that time, he smoked methamphetamine at Webb's house. Appellant told Detective Dibrell that both Kirby and Gonzales obtained methamphetamine from Webb. Appellant told Detective Dibrell that he knew Kirby had methamphetamine inside the vehicle.

---

[1]*Miranda v. Arizona*, 384 U.S. 436 (1966).

3

Detective Dibrell agreed that sixteen grams of methamphetamine is a "fairly substantial" amount. He said that such an amount was intended for distribution as opposed to individual use. Detective Dibrell said that sixteen grams of methamphetamine has a value of at least $1,600. Detective Dibrell testified that Ziploc bags, such as the twenty-nine empty bags that were found in Kirby's shoe, are used to package methamphetamine for distribution. Detective Dibrell said that he had "no doubt" that the amount seized was intended for distribution.

Kirby testified that the methamphetamine belonged to him. He said that Appellant did not know anything about the methamphetamine. Kirby testified that he planned to distribute the bags of methamphetamine to two people.

Detective Dibrell testified about the location of the stop. He said that Appellant stopped his vehicle "directly across" from Early High School. Detective Dibrell indicated that the stop occurred less than 1,000 feet from school property.

*Analysis*

Appellant presents five issues for review. In his first two issues, Appellant contends that the trial court erred (1) in defining "intentionally" and "with intent" in terms of the nature of the conduct rather than the result of the conduct in the abstract portion of the jury charge and (2) in failing to apply a result-of-conduct definition of "intentionally" and "with intent" to the law of parties issue in the application portion of the jury charge. In his third issue, Appellant contends that his trial counsel rendered ineffective assistance in failing to request that the jury charge provide a definition of "intentionally" and "with intent" in terms of the nature of the result only and to request that those definitions be applied to the law of parties as set forth in the application paragraph of the charge. In his fourth issue, Appellant contends that the trial court erred in refusing to allow him to impeach the credibility of Detective Dibrell by eliciting testimony related to

4

Detective Dibrell's work history and to an allegation that Detective Dibrell tampered with evidence. In his fifth issue, Appellant contends that the evidence was insufficient to establish that he committed the offense within 1,000 feet of the premises of a school.

*A. Jury Charge Issues*

The indictment alleged that, on or about November 9, 2011, Appellant "did then and there knowingly possess, with intent to deliver, a controlled substance, namely, Methamphetamine, in an amount of four grams or more but less than 200 grams." The indictment further alleged that "[appellant] committed the above offense within 1,000 feet of the premises of a school, to wit: Early High School, 115 Sudderth, Early, Texas."

The trial court stated in the jury charge that "[o]ur law provides that a person commits an offense if he knowingly possesses with intent to deliver a controlled substance." The trial court included the following definitions of "intentionally" and "knowingly" in the charge:

> A person acts intentionally, or with intent, with respect to the nature of his conduct when it is his conscious objective or desire to engage in a conduct.

> A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to the circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist.

The trial court also provided instructions related to the law of parties. The trial court stated as follows:

> A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.

> A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or

5

attempts to aid the other person to commit the offense. Mere presence alone will not constitute one a party to an offense.

The trial court submitted a law of parties issue in the application paragraph of the charge.

Section 6.03 of the Penal Code provides that "[a] person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." TEX. PENAL CODE ANN. § 6.03(a) (West 2011). Thus, with respect to the definition of "intent," Section 6.03(a) delineates two "conduct elements" that may be involved in an offense: (1) the nature of the conduct and (2) the result of the conduct. *See McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989). As shown above, the trial court in this case defined "intent" in terms of the nature of the conduct and not in terms of the result of the conduct.

Appellant argues that the trial court erred in failing to define "intentionally" in terms of the result of the conduct in the abstract portion of the charge and in failing to apply a result-of-conduct definition to the law of parties. We disagree. A nature-of-conduct crime, such as gambling or assault by threat, is criminalized because the nature of the act itself is unlawful, regardless of any result that might occur. *McQueen*, 781 S.W.2d at 603; *Zuliani v. State*, 383 S.W.3d 289, 298 (Tex. App.—Austin 2012, pet. ref'd). "[T]he act itself is the gravamen of the offense." *Young v. State*, 341 S.W.3d 417, 423 (Tex. Crim. App. 2011). When specific acts are criminalized because of their very nature, a culpable mental state must apply to committing the act itself. *McQueen*, 781 S.W.2d at 603. A result-of-conduct crime, such as murder or injury to a child, is one in which unspecified conduct is criminalized because of its result. *Id.*; *Zuliani*, 383 S.W.3d at 298. When unspecified conduct is criminalized because of its result, a culpable mental state must apply as to that result. *McQueen*, 781 S.W.2d at 603.

6

An offense may be both result and nature oriented. *Id.*; *Murray v. State*, 804 S.W.2d 279, 281 (Tex. App.—Fort Worth 1991, pet. ref'd). In such cases, the trial court should submit the complete statutory definition of "intentionally" and "knowingly" so that the jury can consider both the result of the defendant's conduct and the nature of his conduct. *Murray*, 804 S.W.2d at 281. However, if the offense is either only a nature-of-conduct offense or a result-of-conduct offense, the trial court should submit statutory definitions of "intentionally" or "knowingly" that are limited to the respective culpable mental state required. *Cook v. State*, 884 S.W.2d 485, 490-91 (Tex. Crim. App. 1994); *Murray*, 804 S.W.2d at 281.

Section 481.112(a) of the Health and Safety Code provides that a person commits the offense of possession of a controlled substance with intent to deliver it if he "knowingly . . . possesses with intent to deliver a controlled substance listed in Penalty Group 1." TEX. HEALTH & SAFETY CODE ANN. § 481.112(a) (West 2010). Methamphetamine is listed in Penalty Group 1. *See id.* § 481.102(6). Section 481.112(a) criminalizes the act of possessing a controlled substance with intent to deliver it. The gravamen of the offense is the conduct of possessing a controlled substance with the intent to deliver it. The act or conduct of "knowingly" possessing a controlled substance with intent to deliver it is punished, regardless of any result. The offense focuses on the nature of the defendant's conduct and not any result that might occur. Because the offense focuses on the nature of the conduct, we conclude that, as alleged in the indictment in this case, the offense of possession of methamphetamine with intent to deliver it is a nature-of-conduct offense. Therefore, the trial court did not err in defining "intentionally" and "knowingly" in the jury charge as those definitions related to the offense charged in the indictment.

At trial, Appellant presented a defense that he believed the purpose of the trip to Granbury was for Kirby to obtain money from Webb so that Kirby could pay his rent. Appellant attempted to establish that he did not know Kirby and Gonzales planned to obtain methamphetamine from Webb or actually obtained it from her. Appellant essentially contends that, because the trial court defined "intentionally" in terms of the nature of the conduct, the charge improperly allowed the jury to convict him under the law of parties if the jury concluded that he intentionally drove the vehicle, even if he was mistaken about the purpose of the trip. We disagree with Appellant's contention.

Section 7.01(a) of the Penal Code provides that "[a] person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." PENAL § 7.01(a). Section 7.02(a)(2) provides that "[a] person is criminally responsible for an offense committed by the conduct of another if[,] acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2). When a party is not the primary actor, the State must prove conduct constituting an offense plus an act by the defendant done with the intent to promote or assist such conduct. *Beier v. State*, 687 S.W.2d 2, 3 (Tex. Crim. App. 1985); *Schnidt v. State*, 357 S.W.3d 845, 855 (Tex. App.—Eastland 2012, pet. ref'd). Section 7.02(a) contains the culpable mental state of "intent." Specifically, the statute requires the State to prove that the defendant committed an act with the "intent" to promote or assist the commission of the offense. PENAL § 7.02(a)(2).

8

In this case, the trial court's instructions on the law of parties in the abstract section of the jury charge tracked the language of the relevant statutory provisions. The trial court stated as follows in the application paragraph:

> Now, if you find from the evidence beyond a reasonable doubt that . . . KEVIN ROYCE PEEK . . . (either acting alone or with JAMES KIRBY PEEK or HECTOR GONZALES, with the intent to promote or assist the commission of the offense of Possession of a Controlled Substance with the Intent to Deliver, if any, solicited, encouraged, directed, aided or attempted to aid JAMES KIRBY PEEK or HECTOR GONZALES, to commit the offense, if he did), did then and there knowingly possess, with intent to deliver, a controlled substance, namely, methamphetamine, in an amount of four grams or more but less than 200 grams, then you will find the defendant "guilty" as charged of Possession of a Controlled Substance with Intent to Deliver, as set forth in the indictment.

The language in the application paragraph followed the appropriate statutory language for the law of parties. *See* PENAL § 7.02(a)(2).

The court's charge did not allow the jury to convict Appellant based only on a finding that he intentionally drove the vehicle. Instead, the trial court correctly charged the jury on the culpable mental state: Appellant must have acted with the "intent" to promote or assist the commission of the charged offense. *See id.* As to the law of parties, the charge required the State to prove that Kirby or Gonzales engaged in conduct that constituted the charged offense and that Appellant committed an act with the intent to promote or assist such conduct. *Beier*, 687 S.W.2d at 3. As stated above, the trial court instructed the jury that "[a] person acts intentionally, or with intent, with respect to the nature of his conduct when it is his conscious objective or desire to engage in a conduct." As charged, the jury could not convict Appellant under the law of parties unless it found that Appellant acted with the conscious objective or desire to promote or assist Kirby or Gonzales in the commission of the offense. If, as Appellant claimed, he did not know that

9

Kirby and Gonzales planned to obtain or had obtained methamphetamine, he could not have formed the requisite intent to promote or assist them in the commission of the offense, and the jury could not have convicted him under the court's charge. Accordingly, we conclude that the jury charge was not erroneous. Appellant's first and second issues are overruled.

*B. Assistance of Counsel*

To determine whether Appellant's trial counsel rendered ineffective assistance, we must first determine whether Appellant has shown that his counsel's representation fell below an objective standard of reasonableness and, if so, then determine whether there is a reasonable probability that the result of the proceeding would have been different but for his counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 726 S.W.2d 53, 55–57 (Tex. Crim. App. 1986). We must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and Appellant must overcome the presumption that, under the circumstances, the challenged action could be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). An allegation of ineffective assistance of counsel must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999).

In his third issue, Appellant contends that his trial counsel rendered ineffective assistance in failing to request that the jury charge provide a definition of "intentionally" and "with intent" in terms of the result of conduct and in failing to request that those definitions be applied to the law of parties as set forth in the charge. Trial counsel is not ineffective for failing to make futile objections or request instructions that are not required. *Wood v. State*, 4 S.W.3d 85, 91 (Tex. App.—Fort Worth 1999, pet. ref'd). To prevail on an ineffective assistance claim

for failing to make an objection, an appellant must show that the trial court would have erred in overruling the objection. *Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996). Likewise, to show counsel was ineffective for failing to request a jury instruction, an appellant must show that he was entitled to the instruction. *Cardenas v. State*, 30 S.W.3d 384, 392 (Tex. Crim. App. 2000). We have already held that the trial court's instructions on intent and the law of parties were not erroneous. Accordingly, Appellant cannot show that the trial court would have erred in overruling an objection to the instructions or that he was entitled to instructions that defined intentionally in terms of the result of conduct.

Appellant has not shown that his counsel rendered ineffective assistance. Appellant's third issue is overruled.

### C. Exclusion of Impeachment Evidence

Appellant contends in his fourth issue that the trial court erred in excluding evidence that Detective Dibrell left the Early Police Department after being demoted there and that Detective Dibrell allegedly tampered with evidence in another case. Appellant asserts that this evidence was admissible to impeach Detective Dibrell's credibility as a witness.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006). We will not reverse a trial court's ruling unless it falls outside the zone of reasonable disagreement. *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002).

The exclusion of potential impeachment evidence touches upon an accused's Confrontation Clause rights. *See Davis v. Alaska*, 415 U.S. 308, 315–16 (1974); *Pointer v. Texas*, 380 U.S. 400, 403–04 (1965); *Castillo v. State*, 939 S.W.2d 754, 758 (Tex. App.—Houston [14th Dist.] 1997, pet. ref'd). The accused should be allowed great latitude to show a witness's bias, prejudice, or motives to testify

11

falsely. *Chambers v. State*, 866 S.W.2d 9, 26–27 (Tex. Crim. App. 1993); *Hodge v. State*, 631 S.W.2d 754, 758 (Tex. Crim. App. [Panel Op.] 1982). The proponent of impeachment evidence bears the burden of demonstrating the relevance of the proffered evidence to the issue of bias or prejudice. *Chambers*, 866 S.W.2d at 26–27. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. The credibility of a witness may be attacked by evidence that the witness is slanting his testimony against or in favor of a party as a result of a personal interest or bias in the cause. *Willingham v. State*, 897 S.W.2d 351, 358 (Tex. Crim. App. 1995). The proponent of the evidence must establish a specific connection between the witness's testimony and the cause that discloses an actual bias or motive. *Id.* Determining the limits of cross-examination to show bias is a matter that rests within the sound discretion of the trial court. *Chambers*, 866 S.W.2d at 27.

Outside the presence of the jury, Appellant's counsel informed the trial court that "we intend as impeachment purposes to bring up some of the circumstances regarding why Mr. Dibrell left the Early Police Department to go to work in Mills County." Appellant's counsel stated, "specifically, Your Honor, the issues that we would like to bring up would be basically that Mr. Dibrell quit on his own after being demoted, and also we understand there has been allegations that Mr. Dibrell tampered with evidence." The trial court stated that, "if there is any allegation of tampering, we are going to take that up outside of the presence of the jury." Appellant's counsel stated that, "regarding evidence to that matter, Chief Mercer will probably be our witness."

Appellant's counsel questioned Detective Dibrell on voir dire examination. During that examination, Detective Dibrell testified that he left his employment

12

with the Early Police Department voluntarily and that he was not fired from the department. He said that he had conflicts with Chief Mercer with respect to the manner in which Chief Mercer conducted the department's operations. Detective Dibrell made his concerns known to Chief Mercer. Detective Dibrell did not believe that Chief Mercer ever questioned his honesty with respect to the concerns that he raised. Appellant's counsel tried to establish that Detective Dibrell was demoted from his investigative duties to patrol duties. Detective Dibrell testified that Chief Mercer threatened to demote him but never demoted him. Detective Dibrell said that he "[went] back to patrol" because the department was shorthanded in patrol.

Appellant's counsel also asked Detective Dibrell questions about whether anyone had ever alleged that he tampered with evidence. The following exchange occurred:

> Q. Now, to your knowledge, since you left the Early Police Department, has there been an allegation regarding that perhaps you tampered with evidence?
> . . . .
> A. Yeah, I hear it all the time. I hear stuff since I have been an officer.

> Q. Is there a specific allegation regarding a Mr. Box or a name similar to that?

> A. Not that I'm aware of. If you clarify who Mr. Box is, I might could be a little bit more specific with my answer.

> Q. So, you don't know of any specific allegation of tampering with evidence that has been raised since you left the Early Police Department?

> A. Yes, I am. I mean, once I quit, the rumor was I got fired for tampering with evidence. I mean, that comes with -- that is the nature of the beast in narcotics.

13

Q. Have you -- has there been a specific person or event named with that rumor?

A. Not to my knowledge. I haven't been able to figure out where it stemmed from, but I would hope that if the rumor was true, I would hope I would have been investigated and would have been found guilty or innocent, one way or another because --

Q. So, you understand or, I guess, maybe you've heard the same rumors I have?

A. Well, I've heard rumors about every narcotics officer, me included. So, I take a firm stance against dirty officers. I will be the first to go after a dirty officer . . . .

Q. Has there been an investigation that you know of regarding allegations made against you for tampering with the evidence?

A. The only thing that I could think of is, one time somebody came in. We seized a cell phone, and he was a third party, saying, "Hey, my coworker" -- "The guy, my employee, said that you used his cell phone to make a phone call," or something like that, or added a call or something like that. But that was nothing. That is the only thing that I can think of, because that was a major case I had at the time that was pending, that did raise a big stink, because that one was tied in with a huge methamphetamine case.

Q. No official proceedings or complaints have been brought against you since you left the Early Police Department?

A. No, sir, and I would like to know if you have any.

[Defense Counsel]: Your Honor, we have no further questions.

The judge then stated that, "[f]rom what I have heard, unless you have other evidence to put on, then I am not going to allow the questions." Appellant's counsel stated that "we would like to bring this evidence up in the trial regarding impeachment of Mr. Dibrell. We believe that it does affect his credibility." The judge ruled, "I'm not going to allow the evidence, unless you have further proof of an actual event or events, other than just speculation and rumor." Appellant did

14

not call Chief Mercer to testify on the issue. Nor did Appellant present any other evidence on the issue.

Appellant contends in his brief that Detective Dibrell could have believed that the more helpful he was in obtaining convictions in Brown County by giving testimony that was favorable to the State, the less likely it was that the district attorney's office would investigate the tampering allegations against him. Based on this contention, Appellant argues that the excluded testimony showed a potential bias or motive on the part of Detective Dibrell to provide testimony that was favorable to the prosecution and that, therefore, the testimony was admissible to impeach Detective Dibrell's credibility. We disagree.

As the trial court concluded, Appellant presented nothing more than "speculation and rumor" on the impeachment issues. Appellant did not present any evidence that identified any person who had made a tampering allegation or that showed the details of any tampering allegation. Nor did Appellant offer any evidence that Detective Dibrell had been investigated on a tampering allegation in the past or that he faced a future investigation. Additionally, Appellant did not show that Detective Dibrell had been demoted at the Early Police Department for any reason, much less because of a tampering charge. Based on the speculative nature of the proffered evidence, the trial court could have reasonably concluded that Appellant failed to meet his burden to demonstrate the relevance of the evidence to the issue of bias or motive to testify falsely. Therefore, we conclude that the trial court did not abuse its discretion in excluding the evidence. Appellant's fourth issue is overruled.

### D. Sufficiency Challenge

In his fifth issue, Appellant challenges the sufficiency of the evidence to establish that he committed the offense in a drug-free zone. Specifically, Appellant contends that the evidence was insufficient to support the jury's finding

that he committed the offense within 1,000 feet of the premises of a school. *See* HEALTH & SAFETY § 481.134(c)(1) (West Supp. 2014).

In response to a special issue, the jury found that Appellant committed the offense within 1,000 feet of Early High School. We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under that standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). In conducting a sufficiency review, we defer to the jury's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899.

Detective Dibrell testified regarding the location where he stopped Appellant's vehicle. He said that the stop occurred on Early Boulevard, "directly across from the high school." He then testified as follows in answer to the prosecutor's questions:

> Q. And, so, when we say directly across from the high school, can you give the jury an estimation of approximately how far away they would have been from the school property?
>
> A. 50 foot maybe -- four lines, including the left turn lane. Then right on the other side of that is school property.
>
> Q. All right.
>
> A. Or -- I don't know if it actually belongs to the school, because you have some occupied space between it and the school, but.
>
> Q. Well, can you safely say that it was fairly close to the school?

16

A. Oh, yes, yes, for sure. I mean, just right there across the street. There may have been like a building or something else, but right behind that is the school.

Q. All right. So, if I was to ask you specifically about, you know, from where they were stopped to where the school was located or school property, the edge of the school property and so forth, would it have been less than a thousand feet?

A. Oh, yes, definitely.

Q. No doubt about that?

A. No, no question about it.

Q. Okay. Now, the school we are talking about, that is the one that is located there at the 115 Sudderth Drive in Early, Texas?

A. Yes, sir.

Kirby testified that Detective Dibrell pulled Appellant over by Early High School. Kirby said that Appellant stopped the vehicle right by Early High School.

Based on the evidence, we conclude that a rational trier of fact could have found that Appellant committed the offense within 1,000 feet of the premises of a school. Therefore, the evidence is sufficient to support the finding that Appellant committed the offense in a drug-free zone. Appellant's fifth issue is overruled.

*This Court's Ruling*

We affirm the judgment of the trial court.

JOHN M. BAILEY

April 16, 2015                                            JUSTICE

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

17