**Opinion filed February 9, 2023**



## In The

# Eleventh Court of Appeals

_____

## No. 11-21-00134-CR

_____

## MARCARIO HINOJOS ESTORGA, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 358th District Court**
**Ector County, Texas**
**Trial Court Cause No. D-20-1230-CR**

### M E M O R A N D U M   O P I N I O N

Marcario Hinojos Estorga, Appellant, appeals his conviction for the third-degree felony offense of injury to a child, elderly individual, or disabled individual. *See* TEX. PENAL CODE ANN. § 22.04(a)(3), (f) (West Supp. 2022). The jury found Appellant guilty as charged, found the two enhancement allegations to be true, and assessed punishment at confinement for sixty years in the Institutional Division of the Texas Department of Criminal Justice. The trial court sentenced Appellant accordingly. On appeal, Appellant presents two issues in which he complains that

he was deprived of his right to a fair trial and due process of law when the trial court charged the jury: (1) by inclusion of an instruction on the law of provocation and (2) the inclusion of "nature of conduct" within the stated definitions of "intentionally" and "knowingly"—from Section 6.03 of the Texas Penal Code—when charged with a "result of conduct" offense. We affirm the judgment of the trial court.

*Factual Background*

Appellant and Gloria Vasquez had been in a relationship since 2014. Vasquez would often stay with Appellant at his home. On the evening of September 10, 2020, Vasquez picked up Appellant from work, and the two argued. They then separated and Vasquez spent the evening with her daughter.

In her testimony at trial, Vasquez stated that she and her daughter drank some wine coolers, after which an acquaintance drove Vasquez to Appellant's house around 11:00 p.m. Vasquez testified that after entering the house, she went to the bedroom, tripped over a shoe, and touched the bed. According to Vasquez, Appellant "jumped out of bed," accused Vasquez of being drunk—which she denied, and told her to leave his house. Vasquez claims that she attempted to deescalate the situation by asking Appellant to lie down but that when she turned around, Appellant punched Vasquez in the back of the head. Even though Vasquez told him to stop, Appellant continued to verbally and physically assault her. Vasquez testified that she pushed Appellant away and told him to leave her alone. Appellant pushed her up against a wall, and Vasquez kicked him in response. According to Vasquez, Appellant then punched her in the face three or four times, causing her mouth to bleed. Vasquez unsuccessfully attempted to call 9-1-1 twice; the first time, she dropped the phone, and the second time, Appellant knocked the phone out of her hands. Vasquez left and went to her daughter's house, and her daughter then called 9-1-1.

At trial, Appellant testified that he only acted in defense of himself. Appellant testified that he had called Vasquez to tell her to come home, but Vasquez did not respond. Appellant was concerned because Vasquez went to drink with her daughter two other times that week, coming home as late as 1:30 a.m. Appellant did not hear from Vasquez, so he locked the door and went to bed at 10:30 p.m.—only to be woken up an hour later by Vasquez ringing the doorbell and knocking on the door and a window to get Appellant to let her in. Appellant testified that Vasquez was drunk and that she ran into a tree outside while walking around the house. Appellant said that he helped Vasquez inside, put her on the couch, and went back to bed. Later, Vasquez got up, came into the bedroom, and tripped on a shoe, which woke Appellant and started another argument. Appellant claimed that Vasquez then slapped Appellant in the face "hard enough for [him] to see stars." Appellant pushed her out of the room, and she bumped into a wall trying to get away from Appellant while he was "trying to guide her out the door." Appellant also testified that he did not strike Vasquez in the head but that he did hit her in the jaw.

On appeal, Appellant argues that in the guilt/innocence charge, the trial court committed reversible error twice: first, in giving an instruction on the law of provocation, and second, by including instructions for both the culpable mental states of "result of conduct" and "nature of conduct" within the definitions of "intentionally" and "knowingly" when Appellant was on trial for a result-of-conduct offense. *See* PENAL § 6.03(a)–(b) (West 2021).

*Standard of Review*

A review of alleged jury-charge error involves two steps. *Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005); *Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994). First, we determine if there is any error; second, if there is error, we must determine if the error is harmful requiring reversal. *Ngo*, 175 S.W.3d at 743–44; *Abdnor*, 871 S.W.2d at 731–32.

3

Not all jury charge errors require reversal on appeal. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). If the charge is erroneous, then on appeal we must first determine if the defendant objected to the erroneous charge. *Id.* If the defendant objected to the erroneous charge, we will reverse if the record shows that the error caused "some harm." *Id.* Conversely, if the defendant failed to object, an appellate court may only reverse upon a finding of "egregious harm." *Id.* Egregious harm is harm that denies the defendant a fair and impartial trial. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013). This is a difficult standard to meet, and the harm must be shown in the record. *Reeves*, 420 S.W.3d at 816. To assess harm, the appellate court reviews (1) the jury charge itself, (2) the state of the evidence, including weight and probative value, (3) counsel's arguments, and (4) any other relevant information in the trial record. *Vega v. State*, 394 S.W.3d 514, 521 (Tex. Crim. App. 2013).

*Analysis*

At the jury charge conference, the trial court and both parties conducted a thorough review of the charge. At no point during the jury charge conference did Appellant object to the inclusion or wording of either of the instructions about which he now complains on appeal. Because Appellant did not object to either instruction, error, if any, will be reviewed under the egregious harm standard. *Reeves*, 420 S.W.3d at 816.

I. *Provocation*

In his first issue, Appellant argues that there was no evidence to support an instruction on the "law of provocation." The doctrine of provocation or "provoking the difficulty" provides that, if the defendant provoked the victim to attack the defendant so that the defendant would have a pretext to kill or injure the victim, the defendant forfeits his right of self-defense. *Elizondo v. State*, 487 S.W.3d 185, 198 (Tex. Crim. App. 2016); *Smith v. State*, 965 S.W.2d 509, 512–13 (Tex. Crim. App.

4

1998); *see* PENAL § 9.31(b)(4) (West 2019).  Appellant asserts that the trial court erroneously included an instruction on the doctrine of "provocation" and cites *Smith* in support.

Appellant's reliance on *Smith* and the doctrine of provocation is misplaced because, in its charge to the jury, the trial court did *not* instruct the jury on the *doctrine of provocation*.  Rather, the specific language from the jury charge about which Appellant complains on appeal reads as follows:

> Self-defense does not cover conduct in response to verbal provocation alone.  The defendant must have reasonably believed the other person had done more than verbally provoke the defendant.

This language stems from Section 9.31(b)(1) of the Penal Code; It does *not* encompass the doctrine of provocation under *Smith* or Section 9.31(b)(4), does not relate to any provocation by Appellant as a pretext to injure Vasquez, and does not inform the jury about any forfeiture of or limitation on Appellant's right of self-defense.  *See Woodruff v. State*, No. 08-19-00141-CR, 2021 WL 3667272, at *5–6 (Tex. App.—El Paso Aug. 18, 2021, pet. ref'd) (mem. op., not designated for publication) (addressing the distinction between a Section 9.31(b)(1) instruction and a Section 9.31(b)(4) instruction).  The Section 9.31(b)(1) instruction about which Appellant complains on appeal does not constitute a "provocation" instruction.  *Id.*

Furthermore, the trial court did not err when it tracked the language of Section 9.31(b)(1) and instructed the jury that self-defense does not cover conduct "in response to verbal provocation alone."  *See id.*; *Preston v. State*, No. 03-16-00573-CR, 2018 WL 3447713, at *11 (Tex. App.—Austin July 18, 2018, no pet.) (mem. op., not designated for publication) (holding that such an instruction was a correct statement of the law of self-defense as provided for in the Penal Code and the Texas Criminal Pattern Jury Charges); *Castillo v. State*, No. 14-03-00034-CR, 2005 WL 1294461, at *11 (Tex. App.—Houston [14th Dist.] Feb. 15, 2005, pet. ref'd) (mem. op., not designated for publication) (stating that such an instruction

5

does not constitute a limitation on self-defense). Because we have found no error with respect to Appellant's first issue, it is unnecessary to further analyze or discuss Appellant's claim of egregious harm. We overrule Appellant's first issue.

II. *"Intentionally" and "Knowingly" Definitions*

In his second issue, Appellant argues that the trial court erred by the inclusion of an instruction that might be appropriate for "nature of conduct" offenses but not for the offense with which Appellant was charged—Injury to a Child, Elderly Individual, or Disabled Individual under Section 22.04 of the Texas Penal Code—a "result of conduct" offense. Appellant contends that the Section 6.03 definitions of "intentionally" and "knowingly" constituted error because they included "nature of conduct" language in addition to "result of conduct" language. In light of the erroneous instruction to the jury, Appellant contends that he was egregiously harmed, being deprived of due process and the right to a fair trial.

The Texas Penal Code provides four culpable mental states for offenses: intentionally, knowingly, recklessly, and criminal negligence. PENAL § 6.03. The scope of the above culpable mental states are limited by "conduct elements," which fall into three offense categories: (1) "results of conduct" (2) "nature of conduct," and (3) "surrounding circumstances" offenses. *Cook v. State*, 884 S.W.2d 485, 487 (Tex. Crim. App. 1994) (citing *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim App. 1989)); *see Young v. State*, 341 S.W.3d 417, 423–24 (Tex. Crim. App. 2011). The Court of Criminal Appeals requires trial courts to limit the culpable mental states in their jury charge only to the "conduct elements" for the specific offense on trial. *Cook*, 884 S.W.2d at 491.

The crux of the "conduct elements" question is what makes the conduct illegal. For example, "nature of conduct" crimes, such as gambling and assault by threat, focus on the nature of the crime. *Peek v. State*, 494 S.W.3d 156, 162 (Tex. App.—Eastland 2015, pet. ref'd) (citing *McQueen*, 781 S.W.2d at 603; *Zuliani v.*

6

*State*, 383 S.W.3d 289, 298 (Tex. App.—Austin 2012, pet. ref'd)). "Result of conduct" crimes, such as injury to a child or to an elderly individual, focus on the result of the act. *McQueen*, 781 S.W.2d at 603 (collecting cases). "Circumstances of conduct" crimes, such as unlawfully discharging a firearm, focus on the surrounding circumstances of the act. *Young*, 341 S.W.3d at 423 (unlawfully discharging a firearm).

Injury to the elderly is defined by the injury caused, not how the injury was caused nor the surrounding circumstances that led to the injury being caused. *See* PENAL § 22.04(a). Therefore, as the Court of Criminal Appeals has held, injury to the elderly is a "result of conduct" offense. *Jefferson v. State*, 189 S.W.3d 305, 312 (Tex. Crim. App. 2006); *Kelly v. State*, 748 S.W.2d 236, 239 (Tex. Crim. App. 1988); *see* PENAL § 22.04(a); *see also Cook*, 884 S.W.2d at 487.

Since injury to a child, elderly individual, or disabled individual is a result-oriented crime, the trial court's inclusion of the "nature of conduct" language in the definitions of "intentionally" and "knowingly" was error. *See Haggins v. State*, 785 S.W.2d 827, 828 (Tex. Crim. App. 1990) (holding that defendant was entitled to a definition in the jury charge that is limited to the kind of mental state criminalized in the statute). The State concedes that the inclusion of the "nature of conduct" language was error. Appellant did not, however, object to this instruction at trial; therefore, we use an egregious harm standard to evaluate the error. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). "[T]he record must show that a defendant has suffered actual, rather than merely theoretical, harm from jury instruction error. Errors that result in egregious harm are those that affect 'the very basis of the case,' 'deprive the defendant of a valuable right,' or 'vitally affect a defensive theory.'" *Ngo*, 175 S.W.3d at 750 (footnote omitted).

To assess egregious harm, we review what the Texas Court of Criminal Appeals has referred to as the *Almanza factors*: (1) the jury charge itself, (2) the state

of the evidence, including weight and probative value, (3) counsel's arguments, and (4) any other relevant information in the trial record. *See Vega*, 394 S.W.3d at 521. When considering harm in a failure to limit the definition of culpable mental states, we may consider the degree to which the application paragraph limits any overbroad language. *Cook*, 884 S.W.2d at 492 n.6. When the facts, as applied to the application paragraph, point the jury to the appropriate definitions, there is no harm in a failure to limit the definitions of culpable mental state to result and circumstances of conduct. *Cook v. State*, No. 05-90-01378-CR, 1994 WL 533063, at *3 (Tex. App.—Dallas Sept. 28, 1994, no pet.) (not designated for publication).

In our review of the record, the entirety of the jury charge weighs against finding harm. Analyzing the jury charge, we see that the trial court used the standard definitions of mental culpability found in Section 6.03 of the Penal Code in the abstract portion of the jury charge.[1] However, the definitions of mental culpability were appropriately limited in the application paragraph of the jury charge. In the application paragraph, the trial court charged the jury as follows:

> Now if you find from the evidence beyond a reasonable doubt that . . . [Appellant] did then and there intentionally or knowingly cause bodily injury to Gloria Vasquez . . . by striking [her] about the head, then you will find [Appellant] guilty as charged . . . .

A similar scenario occurred in *Cook*, where the defendant was charged with intentional murder, a result-oriented crime. *Cook*, 884 S.W.2d at 485, 491 (the

---

[1]The charge read as follows:

A person acts "*intentionally*", or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

A person acts "*knowingly*", or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances . . . exist.

A person acts "*knowingly*", or with knowledge with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

definitions of "intentionally" and "knowingly" in the abstract portion of the jury charge were not limited to "result of conduct"); *see Martinez v. State*, 763 S.W.2d 413, 419 (Tex. Crim. App. 1988). In *Cook*, the Court of Criminal Appeals found error and remanded for a harm analysis. *Id.* at 491–92. To determine harm on remand, the Dallas Court of Appeals viewed the terms in their factual context and analyzed the grammatical structure of the application portion of the jury charge.[2] *Cook*, 1994 WL 533063, at *2. The Dallas court held that the wording of the charge did not authorize the jury to convict the defendant "on his conduct alone," and it held that there was "no harm" in the trial court's failure to limit the abstract definitions of "intentionally" and "knowingly" to the result of the defendant's conduct. *Id.* at *2–3.

Our case is virtually indistinguishable from *Cook*. Here, the abstract definitions contained "nature of conduct" language, even though the charged offense is a "result-oriented" crime. *See* PENAL § 22.04; *Jefferson*, 189 S.W.3d at 312. The application paragraph asked the jury to determine whether Appellant "did . . . intentionally or knowingly cause bodily injury to Gloria Vasquez." The terms "intentionally" and "knowingly" directly modify the phrase "cause bodily injury." Thus, only the "result of conduct" language from the abstract definitions applied to the facts in Appellant's case.

The weight and probative value of the evidence also weighs against finding harm. At trial, Vasquez testified about the circumstances leading up to the assault. She testified that Appellant punched her on the chin and about the face and head.

---

[2]The relevant part of one of the application paragraphs in *Cook* read as follows:

> Now, if you find from the evidence beyond a reasonable doubt that . . . the defendant . . . *did intentionally or knowingly cause the death of MICHAEL WILLIAMS*, an individual, by stabbing MICHAEL WILLIAMS with a knife, a deadly weapon, as alleged in the indictment, . . . then you will find the defendant guilty of murder.

1994 WL 533063, at *2. The other application paragraph in *Cook* contained the same italicized phrase but was a charge on voluntary manslaughter. *Id.*

9

Although Appellant testified that he merely pushed or "guided" her out of the room, he also admitted that he struck her on the jaw once to make her leave. The nature of the injuries sustained by Vasquez, as depicted in bodycam footage and photographs that were admitted as exhibits at trial and as described in the testimony of a police officer who responded to the assault call, support Vasquez's version of the events. This evidence suggests that Appellant by his conduct intended to cause the resulting injuries—consistent with a "result of conduct" offense.

Further, counsels' trial arguments during the guilt/innocence phase weighs against finding egregious harm. Both parties' arguments framed the charge as a "result of conduct" offense. In Appellant's closing argument, he referred to the application paragraph of the jury charge and highlighted the language "that the defendant intentionally and knowingly cased [sic] bodily injury by striking her about the head." In the State's closing argument, the State also argued the law correctly, limiting culpability to the result of Appellant's conduct.

Other relevant information in the trial record weighs against finding harm. During voir dire, the State addressed culpability for injury to an elderly individual and limited its comments to results-only language. The State discussed some definitions but did not define "intentionally" or "knowingly," properly or improperly. The State's opening statement made no reference to any definition of "intentionally" or "knowingly." The record shows that, during its deliberations, the jury never inquired of, submitted any note to, or communicated to the trial court indicating any confusion regarding the element of intent.

The only mention or reference to the erroneous definition of mental culpability is contained in the standard definitions included in the abstract portion of the jury charge. No other part of the record suggests that the State intended to exacerbate the error, or actually caused any exacerbation. All four *Almanza* factors weigh against a finding of harm. Accordingly, we hold that Appellant was not

egregiously harmed by the trial court's failure to limit the abstract definitions, and we overrule Appellant's second issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


W. BRUCE WILLIAMS

JUSTICE


February 9, 2023

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Williams, J., and Wright, S.C.J.[3]

Trotter, J., not participating.

---

[3]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.